### 8150

#### ROUSE v. BRANCH.

WILLS—REVOCATION OF LEGACY.—Under the provisions of a will that "If any of the parties above mentioned shall enter a suit in law to break my will, he shall have $5 only and his share shall be divided among them mentioned in the fourth division of my will," a legatee contesting the will on the ground of forgery is not thereby deprived of his legacy.

Before DeVore, J., Barnwell, August, 1911.    Affirmed.

Action by M. D. Rouse, Laura E. Mears *et al.* against Jim Branch, Carrie Fender *et al.*    Defendants appeal.

*Messrs. Bates & Simms* and *W. B. deLoach,* for appellants. *Messrs. Bates & Simms* cite: 2 Vern. 90; 1 Atk. 399; 3 Wms. 344; 2 Atk. 148; 1 Atk. 526; 14 Sim. 493; 6 L. R. P. C. 1; 70 Ala. 501; 42 N. J. Eq. 388; 14 Lea. 310; 1 Rich. Eq. 465; 6 Rich. Eq. 18; 127 Pa. 486; 209 Pa. 442; 61 How. Pr. 399; 59 Hun. 545; 128 N. Y. 426; 44 Hun. 95; 41 Misc. N. Y. 380; 2 How. Pr. N. Y. N. S. 140; 5 N. Y. Supp. 32; 169 U. S. 398; 94 Va. 557; 19 S. C. 170; 21 L. R. A. (N. S.) 953.

*Mr. W. B. deLoach* cites: 19 S. C. 177; 63 S. C. 475; 82 S. C. 40.

*Messrs. W. H. Holman* and *R. C. Holman,* contra. *Mr. W. A. Holman* cites: 21 L. R. A. (N. S.) 953; 68 L. R. A.

447; 1 Atk. 399; 45 Pa. 228; 31 L. R. A. (N. S.) 258; 61 How. Pr. 399; 15 M. & W. 727; 6 Rich. Eq. 12.

March 25, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. The record contains this statement: "This is an action for partition between the plaintiffs and the defendants, other than the executors, of the real estate, left by the late W. H. Mears, of Hampton county, said State, under the terms of his last will and testament, and for the construction of the said will. The defendants' executors, in their answer likewise desired the instruction of the Court, as to the rights of the various parties under said will, and all of the defendants denied the right of the plaintiffs, to any interest in said estate, by reason of having required the will, to be proven in due form of law, contending that the same was a forgery, and because of the proceeding thereunder taken, as contained in the printed record, now on file in the Supreme Court, in the case of *Thomas* v. *Rouse,* which record is likewise printed herein, as required by respondents."

The following provision appears in the will: "If any of the parties above mentioned, shall enter a suit in law to break my will, he shall have five dollars only, and his share shall be divided among them, mentioned in the fourth division of my will."

The appellants' attorneys in their argument, after discussing the authorities, say: "According to the weight of the foregoing authorities, the following principles seem to be established: (1) Conditions annexed to legacies and devises, providing a forfeiture, in case the will be contested, are valid. (2) In case of a legacy, a breach of the condition, will not work a forfeiture unless there is a gift over of the subject matter of the legacy. (3) If there is no gift over, and there was *probabilis causa litagandi,* a breach of the condition will not work a forfeiture, either, as regards a

legacy or devise.   (4) Where the will is contested, on behalf of an infant legatee or devise, the forfeiture will not be decreed, irrespective of whether there was a gift over or not."

In the first place, let us turn to our own decisions, to see to what extent, this question is determined by them.   In the case of *Mallet* v. *Smith,* 6 Rich. Eq. 12, the testator by his will, made certain provisions for some of his slaves, which were void under the statute.   He bequeathed to his sister, J. M., $2,000; made her one of his residuary legatees; and then provided as follows: "Should any of my legatees, under this my will complain, or express any dissatisfaction with my disposition of my estate, herein made, I hereby direct and empower my executors, in their discretion, to revoke any and all legacies, such complaining legatee or legatees, might have been entitled to, and to dispose of the same, between my other legatees, as to my executors may seem just and proper."   The Chancellor on Circuit, used this language in the case: "It is insisted, on the part of the defendant, that the complainant has forfeited her legacy of two thousand dollars, as well as her interest in the residue, by calling in question the validity of the provisions made in the fourth clause.   The general proposition on this subject was established as early as *Powell* v. *Morgan,* 2 Vern. 91. That was a legacy upon condition that the legatee did not disturb or interrupt the will of the testatrix.   The validity of the will was, however, unsuccessfully contested by the legatee.   It was held that this was no forfeiture of the legacy, as there was *probabilis causa litigandi,* and such is now the well settled doctrine, to wit: that such condition is considered *in terrorem* merely, and does not operate a forfeiture of the legacy.   But where there is not simply a declaration of forfeiture, but a valid bequest to a third person in case of breach of the condition, then if the legatee controvert the will, his interest will cease and vest in the other legatee.

8—91

The exception is discussed by Sir William Grant in *Lloyd* v. *Branton,* 3 Mer. 117. He says that "different reasons have been assigned by different Judges for the operation of a devise over; some holding that it was a clear manifestation of intention that the declaration of forfeiture, was not merely *in terrorem;* and others that it was the interest of the devisee over, which made the difference. But all agree that there must be a valid devise over, in order to defeat the legacy." He declared that the said clause of the will was null and void. There was an appeal to the Court of Appeals in equity and the case was heard by Chancellor Johnston, Dunkin, Dargan and Wardlaw. The opinion of the Court was delivered by Chancellor Wardlaw, who, after stating that said Court was content with the Chancellor's conclusion, and, in general, with his reasoning, although there was not entire concurrence of the members of the Court, in the same views, used the following language: "Without intention or authority to commit the Court to this extent, I express my own opinion, in which Chancellor Johnston fully concurs, that a condition subsequent of this description is void, whether there be a devise over or not, as trenching on the 'liberty of the law,' Shep. Touch. 132, and violating public policy. In *Morris* v. *Burroughs,* 1 Atk. 404, Lord Hardwicke held such a condition to be clearly *in torrorem,* and no forfeiture could be incurred, by contesting any disputable matter in a Court of justice. In *Powell* v. *Morgan,* 2 Vern. 91, cited in the Circuit decree, it was adjudged that breach of such condition, involves no forfeiture, where there is *probabilis causa litigandi.* In one of the latest cases on this subject, *Cooke* v. *Turner,* 15 M. and Wels. 727, a condition was supported as valid, that if the devisee should dispute the sanity and competency of testator to make a will (although testator had been found by inquest to be a lunatic), or should refuse when required by the executors to confirm the will, the disposition in favor of such devisee should be revoked. In delivering the judg-

ment of the Exchequer, Lord Cranmere, now Lord Chancellor, then Sir R. M. Rolfe, admits that the policy of the State, prevents a testator from making the continuance of an estate, depend on the legatee's committing a crime, or refraining to do that which it is, or may be, the interest of the State he should do, such as that he should not marry, should not engage in commerce, should not plow his arable land, or should not do anything else, the performing of which partakes of the character of a duty of imperfect obligation; but he insists that there is no duty of perfect or imperfect obligation, on an heir to contest his ancestor's sanity, and that it matters nothing to the State, whether the land be enjoyed by devise or heir. It seems to me that this is a very narrow view of public policy. It is the interest of the State, that every legal owner should enjoy his estate, and that no citizen should be obstructed, by the risk of forfeiture, from ascertaining his rights by the law of the land. It may be politic, to encourage parties in the adjustment of doubtful rights, by arbitration or by private settlement; but it is against the fundamental principles of justice and policy, to inhibit a party from ascertaining his rights, by appeal to the tribunals established by the State, to settle and determine conflicting claims. If there be any such thing as public policy, it must embrace the right of a citizen, to have his claim determined by law. * * * But the doctrine of the validity of such a condition, where there is a devise over, is too firmly established to be overruled, except upon grave consideration in some cases, where the point is necessarily involved in the decision; and that is not the fact here." The decree was affirmed.

There is also another case in our reports which we will discuss later. Turning to the authorities elsewhere, we quote the following language from the case of *Cooke* v. *Turner*, 15 M. and Wels. 727:

"The conditions said to be void, as trenching on the liberty of law are those which restrain a party from doing some

act, which it is supposed the State has or may have an interest to have done.    The State, for obvious reasons, has an interest that its subjects should marry, and therefore will not, in general, allow parties by contracts or conditions in a will, to make the continuance of an estate, depend on the owner not doing that, which it either is or may be the interest of the State, that he should do.    So the State is interested in having its subjects embarked in trade and agriculture; and, therefore, the law will not give effect to a condition defeating an estate, in case its owner shall engage in commerce, or sow his arable lands, or the like.    The principle on which such conditions are void, is analogous to that on which conditions defeating an estate, unless the owner commits a crime, are void.    In the latter case, the condition has a tendency to induce the violation of a positive duty; in the former, to prevent the performance of what partakes of the character of imperfect obligation.    But in the case of a condition such as that before us, the State has no interest whatever, apart from the interest of the parties themselves. There is no duty, either perfect or imperfect, on the part of an heir to contest his ancestor's sanity.    It matters not to the State whether the land is enjoyed by the heir or by the devisee; and we conceive, therefore, that the law leaves parties to make just what contracts and engagements, they may think expedient, as to raising or not raising, questions of law or of fact among themselves, the sole result of which is to give the enjoyment of the property, to one claimant rather than to another. * * * Where the condition is bad on the ground of public policy, it obviously must be bad whether it be precedent or subsequent; for, the law will no more allow anything contrary to public policy, to be made a means whereby a party shall entitle himself to an estate, than it will allow it to be a means, whereby he shall be deprived of that, of which he is already in possession."

See, also, *Smithsonian Institution* v. *Meech,* 18 Sup. Ct. Rep. 396; Estate of Hite, 155 Cal. 436, and notes to that

case in 17 Am. and Eng. Ann. Cases 993, and 21 L. R. A. (N. S.) 953.

Conceding that the four propositions hereinbefore mentioned, for which the appellant's attorneys contend, are sound as a general statement of law, it does not follow, that they are applicable to the facts of this case.

The cases of *Mallet* v. *Smith,* 6 Rich. Eq. 12, and *Cooke* v. *Turner,* 15 M. and Wels. 727, show—in fact the principle does not seem to be disputed—that a testator can not provide, that the continuance of an estate, shall depend upon the condition, that the devisee or legatee shall not marry, or engage in commerce, or sow his arable lands or the like, as such condition would be against public policy.

We thus see, that *all* conditions in wills, upon which an estate shall be allowed to continue in the devisee or legatee, are not valid, and the question in this case is, whether the right to contest a will, on the ground that it is a forgery, stands upon the same footing, as the right to contest a will when there is a condition, that the devisee or legatee shall not marry, or engage in commerce, or sow his arable land, and the like.

In the case of *Breithaupt* v. *Bauskett,* 1 Rich. Eq. 456, the Court had before it the question, whether a devise to a mistress or illigitimate children, under the statute, was absolutely void or only voidable at the election of the wife or legitimate children, and used this language: "Chief Justice Spencer, delivering the opinion of the Court, says: 'Whenever the act done takes effect as to some purposes, and is void as to persons having an interest in impeaching it, the act is not a nullity, and, therefore in a legal sense, it is not, utterly void, but merely voidable.' Another test of a voidable act or deed is, that every stranger may take advantage of it, but not a voidable one. 2 Lev. 218, Vin. Abr. Tit. Void & Voidable A. Pl. II. Again a thing may be void, in several degrees: 1st. Void so as if never done, to all purposes so as *all* persons may take advantage thereof;

2d. Void to some purposes only; 3d. So void by operation of law, that he that will have the benefit of it, may make it good."

A forged will, certainly comes under the first head. No case has been cited, and we do not believe any can be found, sustaining the proposition, that a devisee or legatee, shall not have the right, upon probable cause, to show that a will is a forgery, without incurring the penalty, of forfeiting the estate given him by the will. The right of a contestant to institute judicial proceedings upon probable cause, to ascertain whether the will was ever executed by the apparent testator, is founded upon justice and morality. If a devisee should accept the fruits of the crime of forgery, under the belief, and upon probable cause, that it was forgery he would thereby become morally a *particeps criminis;* and yet if he is unwilling to commit this moral crime, he is confronted with the alternative of doing so, or of taking the risk of losing all, under the will, in case it should be found not to be a forgery.

Public policy forbids that he should be tempted in such a manner. This is far more obnoxious to public policy, than a condition in the will against marriage.

Judgment affirmed.

*Only* MESSRS. JUSTICES WOODS *and* HYDRICK *participate in this opinion and concur.*