IN RE ESTATE OF LEWIS A. COCKLIN.

C. T. COCKLIN, Executor, Appellant, v. FANNY WATKINS et al., Appellees and Cross-Appellants.

No. 46550.

JANUARY 9, 1945.

REHEARING DENIED MARCH 9, 1945.

John R. DeWitt, of Griswold, and John J. Hess, of Council Bluffs, for appellant.

R. J. Swanson and Floyd E. Billings, both of Red Oak, and Jones & Cambridge, of Atlantic, for appellees and cross-appellants.

MILLER, J.— The proceedings in this estate have been reviewed by this court on two former appeals. In re Estate of Cocklin, 230 Iowa 415, 297 N. W. 864; In re Estate of Cocklin, 232 Iowa 266, 5 N. W. 2d 577. On the first appeal, it appeared

that decedent had executed three wills, one in September 1939, one in December 1939, and the third on February 3, 1940. The contestant, Fanny Watkins, sought to secure a consolidation of proceedings to challenge at one time the validity of all three wills. Her motion was overruled and on appeal this court affirmed the order. The second appeal was taken after the trial of the contest of the will of February 3, 1940. The jury returned a verdict for proponent both as to the testamentary capacity of testator and the absence of undue influence. This court affirmed the judgment. The questions now presented to us relate to the will contest and the entire record therein was introduced in evidence herein.

The decedent was wealthy and left a large estate. He left a widow but no issue surviving. The beneficiaries here before us are two brothers and two sisters of decedent. The first article of the will provided for numerous specific bequests, Paragraph VII thereof bequeathing $2,000 to each surviving brother and sister. The second article created a trust, with the brothers and sisters named among the beneficiaries thereof. Paragraph I of the third article provided as follows:

"It is also my will and desire and I hereby direct that if any person entitled to any legacy, bequest or annuity under the terms of this will shall directly or indirectly contest or dispute the probate of this will or institute or become a party to institute any proceedings or act in the interest of any person who shall institute any proceedings, suit or action for the purpose of abrogating, setting aside, breaking or changing the effect of this will wholly or in part, then and in that event, all the legacies, bequests or annuities declared in favor of such person by this will or provided for herein, shall immediately thereupon be revoked, cease and determine and become wholly void and of no effect."

Following the affirmance by this court of the judgment which admitted the will to probate, the executor filed a petition which recited that the will had been contested, quoted Paragraph I of the third article, above set out, and asserted that Fanny Watkins, the sole named contestant, had forfeited all bequests, legacies, and annuities made for her under the will;

that Winifred Cocklin, Guy Cocklin, and Evelyn Schuler, and each of them, directly and indirectly participated and joined in the contest of the will, became parties thereto directly and indirectly, and thereby caused all legacies, bequests, or annuities in their favor to be forfeited; that the executor had funds with which to pay the legacies provided for in Paragraph VII of the first article of the will but was unable to carry out said provisions because there had been no lawful determination of the rights of Fanny Watkins, Winifred Cocklin, Guy Cocklin, and Evelyn Schuler whether they were entitled to participate therein and the executor was in need of instructions from the court thereon. The prayer was that the court determine the rights of said four beneficiaries under the terms of the will as affected by said will contest and their participation therein.

Fanny Watkins filed a separate answer to said petition which, as amended, asserted four defenses thereto: (1) She had reasonable ground for contesting the will (2) the forfeiture clause (Paragraph I of the third article of the will) is inoperative because there is no gift over of a forfeited legacy or devise (3) the said forfeiture clause is inoperative because against public policy (4) the executor is not a proper person to maintain a forfeiture proceeding and the court has no jurisdiction thereof. Guy Cocklin, Winifred Cocklin, and Evelyn Schuler each filed separate answer to said petition, which, as amended, asserted the defenses asserted by Fanny Watkins and, in addition thereto, specifically denied that any of them had directly or indirectly joined or participated in the will contest.

The four defendants above named asked for separate trials as to the issues so joined between each of them and the executor. Separate trials were had as to each and separate judgments were entered as to each. The court determined that the forfeiture provision is valid and that the attack thereon is foreclosed by the case of Moran v. Moran, 144 Iowa 451, 123 N. W. 202, 30 L. R. A., N. S., 898; that the executor was not a proper person to maintain the proceedings; that the forfeiture clause is operative as against Fanny Watkins and Guy Cocklin but is not operative as against Winifred Cocklin and Evelyn Schuler. The petition of the executor was dismissed as to all four defendants. The executor

appealed from all four judgments and the four defendants appealed from those determinations in each which affected them adversely. The eight appeals were ordered consolidated in this court by order of the chief justice pursuant to stipulation of counsel.

I. The first question for our determination is whether the court erred in holding that the executor was not a proper party to maintain the proceedings herein. We are of the opinion that error was committed.

The trial court gave the following reasons for its judgment:

"It is the opinion of the court that an Executor is not the proper party to do this. His interest is in dividing and distributing the estate according to the terms of the will. The enforcement of the forfeiture clause does not augment the estate, but merely changes the direction in which the property should go. It involves a decision which the Executor has no power to make. The Executor in this case sets up that he is bound to carry out the terms of the will, and after knowing that the will had been contested it was his duty to bring this action for the purpose of protecting himself, and knowing how he should distribute the property. The court believes that the Executor could institute an action, and by a proper notice prescribed by the court, bring into court those who would be interested in the enforcement of the forfeiture clause and require them to elect whether it should be enforced or not, and upon the failure of any person who was so interested, to make such election, that the Executor should then distribute the property of the estate according to the terms of the will, and could thus protect himself."

We are unable to agree with the foregoing pronouncement of the able trial court. It undertakes to confine the activities of the executor too strictly.

Section 11825, Code, 1939, provides:

"The court of the county in which a will is probated * * * shall have jurisdiction coextensive with the state in the settlement of the estate and the sale and distribution thereof."

In Anderson v. Meier, 227 Iowa 38, 42, 287 N. W. 250, 252, we stated:

"Undoubtedly courts of equity in Iowa, contrary to the rule prevailing in many states, entertain suits for construction of wills where there is occasion therefor; but the present action concerns only the distribution of the property of decedents. This is a matter within the jurisdiction of the probate court, and is there pending, and a court of equity cannot intervene. The probate court has jurisdiction. Its right to administer and direct the disposition of the property involved cannot be interfered with." (Citing cases.)

In Citizens State Bk. v. Victoria Sanitorium, 179 Iowa 671, 676, 161 N. W. 664, 666, we stated:

"Hollingsworth, as administrator with will annexed, not only representing the estate, but also charged with the duty of carrying out the terms of the will, and having in his charge all the personal effects of the deceased, had the right, as we think, when a question arose as to the interests of that estate * * * to make application to the court for directions as to how to proceed."

In 21 Am. Jur. 492, 493, section 214, it is stated:

"An executor or administrator may ask the probate court or a court of equity, depending upon the local practice as to where such jurisdiction is lodged, for the construction of a will or for instructions as to conduct with respect to various matters relating to the administration of the estate, such as future accounts. Moreover, where there is room for doubt as to their duties or as to the policy that should be pursued, the judge of the probate court should be consulted before any steps are taken that might seriously affect the funds of the estate. In a suit by a personal representative for advice, a considerable latitude may properly be allowed in giving scope to the questions propounded, where to do so places no unfair burden upon the parties and they have not been in any way misled as to the issues to be presented to the court."

The trial court recognized that the executor did not have the power to decide the question whether the legacies were forfeited, that such question could only be decided by the court.

It also recognized that the executor could bring the parties into court for the purpose of having the question decided, but it was the court's opinion that the executor could merely institute proceedings and that ended his functions, that he could not maintain the proceedings. We cannot agree that he should be so circumscribed.

The situation is somewhat complicated by the fact that C. T. Cocklin, the executor, is one of the principal beneficiaries of the trust set up for the residue of the estate. He would personally profit as much as or more than anyone else if the legacies were forfeited. He attempted to intervene in his individual capacity but was denied that privilege. No appeal was taken from such ruling and the propriety thereof is not before us. However, in Packer v. Overton, 200 Iowa 620, 622, 203 N. W. 307, 308, we stated:

"A preliminary question, not involving the merits of this case, is presented on motion of appellees to dismiss the appeal, which, in logical sequence of the propositions submitted, should be first determined. The motion is predicated on the ground that the administrator has no right to prosecute this appeal. We cannot agree with this contention. It is the duty of an executor or administrator to carry into effect the provisions of the will; and if, perchance, an erroneous order is made or an improper judgment entered with respect to the administration of the estate, it is his right to have the matter reviewed. In re Estate of Bagger, 78 Iowa 171. An executor or administrator acts in a representative capacity. By fiction of identity he is the person of the testator, and it is to him that all interested parties must look. He is charged with the duty of resisting unfounded claims, and to see to it that there is no improper diversion of funds or property in his hands. Briggs v. Walker, 171 U. S. 466 (43 L. Ed. 243). He represents all parties and all interests in the estate. Leighton v. Leighton, 193 Iowa 1299. For this reason he was made the party defendant in the instant case, and he is the only party who could appeal and preserve rights, if any, adversely affected by the judgment."

We hold that the proceedings instituted by the executor were within the jurisdiction of the probate court and that the

court had jurisdiction to finally determine herein whether the legacies in fact and in law had been forfeited.

II. This brings us to the question whether the forfeiture clause (Paragraph VII of the third article of the will) was inoperative for any of the reasons asserted. In holding that it was operative, the court relied upon our holding in Moran v. Moran, supra, 144 Iowa 451, 462, 463, 123 N. W. 202, 206, 30 L. R. A., N. S., 898, 902. The language relied upon sustains the court on all three propositions urged by Fanny Watkins herein. We there stated:

"In this country, however, we find no authority going to the extent of holding that a testator may not under any circumstances impose upon the acceptance of his bounty a valid condition against an attack upon his will by the legatee. Without taking time to cite the cases, it may be said that some courts incline to the view that such conditions are valid only in cases where the testator names some third person to receive the legacy in the event of a breach of the condition by the legatee first named. Others sustain all such conditions attached to devises of real estate, but hold there must be a gift over upon its breach in order to make valid a condition of the same kind attached to a bequest of personalty. A few courts have held the condition inoperative where the beneficiary has probable cause for the contest of the will, while still others reject all these distinctions as arbitrary, and hold the condition valid and enforceable in all cases, whether the gift be of realty or personalty, and without regard to the cause or ground of contest. The latter view appears to be the one now generally held, and to our minds is most in consonance with reason and sound principle. Bradford v. Bradford, 19 Ohio St. 546 (2 Am. Rep. 419) ; Thompson v. Gaut, 14 Lea (Tenn.) 310; In re Bratt, 10 Misc. Rep. 491 (32 N. Y. Supp. 168) ; Hoit v. Hoit, 42 N. J. Eq. 388 (7 Atl. 856, 59 Am. Rep. 43) ; Donegan v. Wade, 70 Ala. 501; Sackett v. Mallory, 1 Metc. (Mass.) 355."

Counsel for the legatees herein concede that the foregoing pronouncements are squarely against their contentions. They ask us to modify and overrule the majority opinion in Moran v.

Moran to the extent necessary to make the position of this court that taken by Judge Evans in his dissenting opinion, wherein he stated, at pages 469 to 473 of 144 Iowa, page 208 of 123 N. W., 30 L. R. A., N. S., 905, as follows:

"Evans, C. J. (dissenting).—Upon one branch of this case I am not able to concur in the majority opinion. The question whether a provision in a will forbidding any contest thereof under penalty of forfeiture of all legacies therein should be given unqualified effect, is one upon which there is a diversity of opinion in the courts. The cases on the subject are comparatively few. It is perhaps true that the numerical majority of the courts which have passed upon the question have adopted the affirmative of the proposition, but some of these have done so with reluctance. I am convinced that the real merit of the argument is with the other view, and that such provision in a will is contrary to public policy, unless it be limited in its application to those contests wherein an element of bad faith enters. Under the law no will can become effective in any of its provisions until it shall have been admitted to probate by the court. Before admitting it to probate, it is the duty of the court to investigate the facts and circumstances attending its execution and bearing upon its validity, and to find judicially therefrom that such will was executed in due form, voluntarily, and understandingly by the purported testator. If the court should find otherwise, it must reject the will and refuse its probate. * * * Manifestly, in order to attain true judicial results, the court has need to learn true facts. These must come, if at all, from those who are or were in a position to know them. * * * If the court is to learn the truth from outside sources of information, it is manifestly important that the highway of information to the court be kept open, and that there shall be no lion in the way. But here is a forfeiture provision in the purported will itself which may be a roaring lion intended to terrorize every beneficiary of the will. Its demand is that no adverse evidence be volunteered. Its tendency is necessarily to suppress material facts, and thus to impede the administration of the law according to its true spirit. * * * And it does sometimes happen in very truth that a will regular in form, bearing the genuine signature

of the testator in the presence of witnesses, is nevertheless not his will. On the contrary, it was framed and dictated by another, and the dying man mayhap put to it his listless hand without knowledge to comprehend or will to resist. Into such a will the proviso under consideration will hereafter surely find a place. The dictator of such a will will be more likely to incorporate such a provision in the will than would the testator himself. On principle, therefore, and in the interest of good public policy, it seems clear to me that the contest of a will in good faith and for probable cause should not be forbidden nor penalized, nor should it be permitted to work a forfeiture of a legacy.''

Judge Weaver, the author of the majority opinion, in anticipation of the foregoing dissent, reasoned as follows, at pages 463 and 464 of 144 Iowa, page 206 of 123 N. W., 30 L. R. A., N. S., 903, to wit:

''For ourselves we can not believe that public interests are in any manner prejudiced or the fundamental rights of any individual citizen in any manner violated by upholding a gift or bequest made on condition that the donee waive or release his claim to some other property right, or even upon condition that he observe some specified line of personal conduct not in violation of law, or contrary to good morals. The donee is under no compulsion to accept the gift. He is free to elect. The question he has to decide is the ordinary one which arises in nearly every business transaction—whether the thing offered him is worth the price demanded. The owner of property may give or refrain from giving. He may attach to his offer such lawful conditions as his reason, caprice, or malice may dictate, but he is dealing with his own, and the donee, who claims the benefit of the gift, must take it, if at all, upon the terms offered. The rule is well expressed in Rogers v. Law, 66 U. S. 253, (17 L. Ed. 58.) Dealing with a will which made provisions for certain heirs on condition that, if they should assert any claims under certain deeds mentioned in the will, the legacies in their favor should become void, the court there says: 'We entertain no doubt as to its force and validity. The condition is lawful and one which the testator has a right to annex in the disposition of his own property. The legatees are not bound to accept the bequest, but, if accepted, it

must be subject to the disabilities annexed. It must be taken *cum onere,* or not at all.' This view of the law appeals to us eminently sound, and the objection to the validity of the condition prescribed in the sixth clause of the will in controversy cannot be sustained.''

It will be noted that the opposing views resulted from a disagreement as to the emphasis to be given the various factors present. Judge Weaver emphasized that an heir has no vested right to inherit; the decedent has a right to make a will and to distribute his bounty as he chooses; those he seeks to benefit need not accept the gift but if they do they must accept it with the conditions that are attached to it. Judge Evans, on the other hand, emphasized that an heir can be disinherited only by a valid will; if there is reasonable doubt that the purported will is valid, the heir should have a right to have the doubt determined by resort to the courts and should not be coerced from appealing thereto by the fact that a judicial determination could only be had at the risk of losing the bequest which the will gave him.

It is a bit difficult to reconcile Judge Weaver's position with that which he later took as the author of the opinion of this court in the case of Fleming v. Merchants' L. Ins. Co., 193 Iowa 1164, 180 N. W. 202, 188 N. W. 703. In that case the question was whether a provision in a life-insurance policy that disappearance or long-continued absence of the insured, unheard of, shall not be regarded as evidence of death or of any right to recover, should be given effect. In speaking for this court, Judge Weaver states, at pages 1168 and 1172 of 193 Iowa, page 704 of 188 N. W., as follows:

''It is true that, within certain limitations, parties may enter into any contract and bind themselves by its terms, even though they appear unreasonable to the average mind; but this has respect to their personal relations and dealings with each other in matters concerning the subject of their contract; but it does not include the right to prescribe or control in advance the course of remedial justice, in the event that their contract becomes the subject of litigation. The state has provided courts,

to which is confided jurisdiction to try and dispose of the controversies which may be brought before them. Generally speaking, every controversy brought into court involves some one or more disputes of fact; and it is for the court to ascertain, with such reasonable certainty as may be, the truth of these disputes.

\* \* \*

"The contention by appellant that to sustain a by-law of this nature does not operate to oust the court of its jurisdiction, and that the objection so stated is groundless, is correct; for in the strict sense of the word the court retains its jurisdiction, and there is no such ouster in fact. Technically, this is true; for the court still retains jurisdiction of the case, with authority to preside at the trial and to enter judgment therein. But the error in the phrase is simply in the choice of words to express a thought which is not at all obscure or uncertain. It is not meant thereby that such a right exercised by litigant parties ousts the court of its authority or power to hear the case and render judgment thereon, but it does mean that the jurisdiction is thereby so limited and circumscribed as to take from the court its authority to conduct the trial and control the introduction of evidence in accordance with the settled rules of law. The right so claimed by the appellant, once established, reduces the court to a mere judicial lay figure, upon which interested and ingenious parties may hang their devices for escaping application of the legally established tests of truth."

While the foregoing quotation discusses propositions that may appear to be foreign to the question now before us, the discussion does pertain to the right to employ a subtle devise to escape the application of legally established tests to determine the truth. If it is contrary to public policy for parties to contract in such a manner as to constitute substantial interference in the court's determination of disputes that may arise as to the rights of the parties to the contract, is it not likewise contrary to public policy for one to so draw his will that it will tend to deny a good-faith resort to the courts by an heir who has a reasonable doubt as to the validity of the instrument which substantially reduces his inheritance?

Moran v. Moran, supra, appears to be the only decision by

this court on the question now before us. We do not know how often a forfeiture provision may have thwarted a good-faith appeal to the courts in a controversy where reasonable doubt as to the validity of a will existed but the heir was unwilling to risk everything on the outcome of litigation. All we know is that this is the first instance where an heir took the risk, lost the litigation, and appealed to this court to seek a re-examination of Moran v. Moran, supra.

At the time that the Moran case was decided (1909), there were relatively few cases on the question now before us. Judge Evans conceded that the numerical weight of authority supported the position of the majority. In an annotation published in 1940, in 125 A. L. R., pages 1135 to 1143, it is stated that the majority of the courts in this country that have passed on the question now support the position of Judge Evans' dissenting opinion and the minority view is represented by our majority opinion in Moran v. Moran. Our examination of the authorities convinces us that the rule of Moran v. Moran may represent the minority rule in this country at this time but that the division of authority is still quite close.

The courts of Missouri, Massachusetts, Michigan, California, Alabama, New Jersey, District of Columbia, and Ohio are aligned with Iowa. Illustrative cases include Rossi v. Davis, 345 Mo. 362, 133 S. W. 2d 363, 125 A. L. R. 1111; Rudd v. Searles, 262 Mass. 490, 160 N. E. 882, 58 A. L. R. 1548; Schiffer v. Brenton, 247 Mich. 512, 226 N. W. 253; In re Miller's Estate, 156 Cal. 119, 103 P. 842, 23 L. R. A., N. S., 868; Donegan v. Wade, 70 Ala. 501; Provident Trust Co. v. Osborne, 133 N. J. Eq. 518, 33 A. 2d 103; Barry v. American Sec. & Tr. Co., 77 U. S. App. D. C. 351, 135 F. 2d 470, 146 A. L. R. 1204; Bender v. Bateman, 33 Ohio App. 66, 168 N. E. 574. It might be added that, in Moskowitz v. Federman (1943), 72 Ohio App. 149, 51 N. E. 2d 48, it is stated that the Supreme Court of Ohio has not as yet decided the question so that the law is still unsettled in that state.

The courts of Pennsylvania, South Carolina, Tennessee, Wisconsin, Washington, West Virginia, Connecticut, New York, Oregon, and Texas support Judge Evans' dissenting opinion. Illustrative cases include In re Friend's Estate, 209 Pa. 442, 58 A. 853, 68 L. R. A. 447; Rouse v. Branch, 91 S. C. 111, 74

S. E. 133, 39 L. R. A., N. S., 1160, Ann. Cas. 1913E, 1296; Tate v. Camp, 147 Tenn. 137, 245 S. W. 839, 26 A. L. R. 755; In re Will of Keenan, 188 Wis. 163, 205 N. W. 1001, 42 A. L. R. 836; In re Chappell's Estate, 127 Wash. 638, 221 P. 336; Dutterer v. Logan, 103 W. Va. 216, 137 S. E. 1, 52 A. L. R. 83; South Norwalk Tr. Co. v. St. John, 92 Conn. 168, 101 A. 961, Ann. Cas. 1918E, 1090; In re Will of Smyth, 246 App. Div. 820, 284 N. Y. Supp. 470, 271 N. Y. 623, 3 N. E. 2d 453; Wadsworth v. Brigham, 125 Or. 428, 458, 259 P. 299, 266 P. 875; First M. E. Church v. Anderson, Tex. Civ. App., 110 S. W. 2d 1177. It might be added that the majority opinion in Moran v. Moran, supra, relied upon the Tennessee decision in Thompson v. Gaut, 14 Lea (Tenn.) 310, but any authority of that decision to support the Iowa rule is destroyed by the later pronouncement in Tate v. Camp, supra. Also, in the case of Fifield v. Van Wyck, 94 Va. 557, 27 S. E. 446, 64 Am. St. Rep. 745, the court refused to enforce a forfeiture clause of a will where there was no gift over because such a provision is in terrorem and inoperative, being contrary to public policy.

In the case of Calvery v. Calvery, 122 Tex. 204, 212, 55 S. W. 2d 527, 530, cited in First M. E. Church v. Anderson, supra, the court states:

"The great weight of authority sustains the rule that a forfeiture of rights under the terms of a will not be enforced where the contest of the will was made in good faith and upon probable cause." (Citing many of the cases last-above cited.)

While, as above stated, we do not believe that the numerical weight of authority is as decisive as the Texas court states it to be, we are convinced that the trend of judicial decision during the last twenty-five years has been definitely and decisively in support of Judge Evans' dissenting opinion and in opposition to our majority opinion in Moran v. Moran, supra. A majority of this court, as now constituted, is of the opinion that this trend is in the interest of good public policy.

In the case of Rouse v. Branch, supra, 91 S. C. 111, 118, 74 S. E. 133, 135, 39 L. R. A., N. S., 1160, 1164, Ann. Cas. 1913E, 1296, 1298, the South Carolina court states, at the end of its opinion, as follows:

"No case has been cited, and we do not believe any can be found, sustaining the proposition, that a devisee or legatee, shall not have the right, upon probable cause, to show that a will is a forgery, without incurring the penalty, of forfeiting the estate given him by the will. The right of a contestant to institute judicial proceedings upon probable cause, to ascertain whether the will was ever executed by the apparent testator, is founded upon justice and morality. If a devisee should accept the fruits of the crime of forgery, under the belief, and upon probable cause, that it was forgery he would thereby become morally a particeps criminis; and yet if he is unwilling to commit this moral crime, he is confronted with the alternative of doing so, or of taking the risk of losing all, under the will, in case it should be found not to be a forgery. Public policy forbids that he should be tempted in such a manner. This is far more obnoxious to public policy, than a condition in the will against marriage."

By the same token, if a will were executed as the result of fraud, would not a legatee, who knew of the fraud but stood silently by fearing to risk loss of his legacy and accepted the fruits of the fraud, be morally a party to it? Also, a will executed by an incompetent is legally no more his will than if it were forged, and a will secured by undue influence is as repugnant to the law as one secured by fraud. Public policy forbids that one should be tempted to let such wills prevail. The administration of justice should not be frustrated in such a manner.

We see no occasion to interfere with the rule established by the Moran case that a testator may legally impose upon a legacy or devise a condition against attack upon the will, that such condition is valid irrespective of whether the gift be of realty or personalty, and irrespective of the presence or absence of a gift over. However, we do modify and to that extent overrule that part of Moran v. Moran, supra, which holds such condition valid without regard to the cause or ground of contest. We now hold that such condition will not be enforced against one who contests the will in good faith and for probable cause.

III. This brings us to the question whether the for-

feiture provision should be enforced herein. The trial court determined that Winifred Cocklin and Evelyn Schuler were not within the forfeiture clause under the rule announced and applied in Haradon v. Clark, 190 Iowa 798, 180 N. W. 868. Without undertaking to set out the evidence, we hold that there was sufficient evidence in the record to support such finding and the same is affirmed.

As to Fanny Watkins and Guy Cocklin, the court found that they were within the forfeiture clause. However, the court held, in obedience to Moran v. Moran, supra, that the questions whether they acted in good faith and for probable cause were immaterial. Ordinarily it would follow that the cause be remanded for a finding on such issue. However, in this case the issue was squarely raised and the record that was made was very complete. We feel certain that nothing new would be presented upon a retrial. The undisputed evidence is that both acted upon advice of counsel. The able judge who presided over the trial of the will contest, and who is now a member of this court, was satisfied that a jury question was presented on the issues of undue influence and testamentary capacity. The jury deliberated for twenty-nine hours and was unable to reach an agreement. Then a "verdict urging instruction" was given to them. They deliberated five or six hours longer before reaching a verdict. We are satisfied that there is no evidence upon which a finding of bad faith could be predicated. Since the case was fully presented and the record is undisputed that Fanny Watkins and Guy Cocklin acted in good faith and for probable cause, we see no occasion for prolonging this phase of the litigation.

By reason of the foregoing, we hold that the court erred in holding that the executor was not a proper person to maintain these proceedings and such finding is reversed. We hold that the court properly held that Winifred Cocklin and Evelyn Schuler had not forfeited their legacies and such finding is affirmed. We hold that the court erred in holding that Fanny Watkins and Guy Cocklin had forfeited their legacies and such finding is reversed. The court reached the correct result in dismissing the proceedings but for erroneous reasons. Accordingly, the cause is remanded for the entry of supplemental judgments in accord with this opinion, dismissing the proceedings on the

merits because none of the legacies was forfeited.—Affirmed in part; reversed in part and remanded with instructions.

OLIVER, GARFIELD, MULRONEY, and SMITH, JJ., concur.

HALE, C. J., and BLISS and WENNERSTRUM, JJ., dissent.

MANTZ, J., takes no part.

HALE, C. J. (dissenting)—Division II of the majority opinion overrules Moran v. Moran, 144 Iowa 451, 123 N. W. 202, 30 L. R. A., N. S., 898. As to this part of the opinion I am compelled to disagree and therefore dissent from the majority opinion.

The decision announced in the Moran case has been the established rule in this state since 1909 and should not be overruled unless we find that the principles of law on which it is based are unsound. So far as precedent is concerned, there is almost an equal division of the courts, some holding that a condition of the will such as we have here is valid, some holding it to be entirely invalid, some coupling it with other conditions such as a gift over, and other courts holding the condition inoperative where the beneficiary brings the contest in good faith. The rule which we adopt among these conflicting theories should be one based upon principle.

It is my own opinion that the cases which sustain the validity of a provision forbidding contest are in consonance with general principles and the general and undisputed rules of the law relating to wills. It is a fundamental rule governing all wills that a testator may control the disposition of his own estate. His freedom to elect the recipients of his bounty and reject others who might claim to be entitled to any part of his estate is unquestioned. The only valid reason for the interference of the court in the disposition of a testator's property by will is where such disposition runs counter to public policy. No one can deny this proposition. It follows, therefore, that the testator should have a right to guard such disposition of his property by any means or any condition not contrary to public policy. The question resolves itself into whether or not this no-contest clause is of such a nature that its enforcement will offend public policy. It is in line with other rules of common application. It

is well established that a devisee or legatee cannot accept a part of a devise or bequest which is favorable to him and reject another part which is unfavorable. He must take the devise burdened with the condition imposed by the will or not take it at all. It is so expressly stated in the Moran opinion, at page 463 of 144 Iowa, page 206 of 123 N. W., 30 L. R. A., N. S., 903, where Justice Weaver says:

"The donee is under no compulsion to accept the gift. He is free to elect. The question he has to decide is the ordinary one which arises in nearly every business transaction—whether the thing offered him is worth the price demanded. The owner of property may give or refrain from giving. He may attach to his offer such lawful conditions as his reason, caprice, or malice may dictate, but he is dealing with his own, and the donee, who claims the benefit of the gift, must take it, if at all, upon the terms offered." Citing Rogers v. Law, 66 U. S. 253, 17 L. Ed. 58.

The same thought is expressed in Elberts v. Elberts, 159 Iowa 332, 337, 141 N. W. 57, 59:

"The plaintiff in this suit, having taken under the will and basing all his rights on the provisions of the will, is bound by every provision thereof."

In our recent case of Brown v. Kalene, 230 Iowa 76, 79, 296 N. W. 809, 810, it is said:

"The appellees could not have the benefit of the property devised to them except under the conditions imposed by the will. They could not accept a part of the bequest or devise most favorable to them and refuse to accept the unfavorable condition."

If a devise or bequest, when accepted, must be accepted with the conditions attached, then how does the rule differ in principle from that announced in the Moran case, that a contesting devisee or legatee must forfeit his rights under the will? The question of public policy is thoroughly discussed in the Moran case at page 463 of 144 Iowa, page 206 of 123 N. W.

In Justice Evans' dissent to the Moran case he cites extreme cases. This can be done under almost any legal proposition. Conditions and circumstances can be imagined under which the application of nearly any rule of law may lead to an absurdity. The dissenting opinion, for instance, suggests the extremely unlikely case of the purported will containing a provision forbidding that it be presented for probate and that it be deemed the genuine will of decedent without probate or other proceedings. So, in the majority opinion here is cited the case of Rouse v. Branch, 91 S. C. 111, 74 S. E. 133, 39 L. R. A., N. S., 1160, Ann. Cas. 1913E, 1296, referring to a forged will. The case is not convincing. We know of no rule which could guard against forgery, nor do we know of any rule which could guard against a contest supported by perjury. No set of rules, however elaborate, could eliminate the possibility of criminal practices in the preparation of any instrument. Any rule might be carried to an extent which would result in injustice under some imaginary state of facts.

To maintain the position the majority opinion takes is to assume that the contestant will fail in his attempt to defeat the will. This, of course, is not necessarily true. If the will is fraudulent, is forged, or is not the true will of the testator, and this is demonstrated in court, then the contestant would prevail; the will would be a nullity and of no effect. The only means he would have of establishing such a fact would be by action in court. If a contestant lacks the proper proof he should and would fail, as he should and would fail in any other action he might bring if it were entered into with insufficient evidence to support the plaintiff's cause. In the event of a true contest, entered into on good grounds and supported by sufficient testimony, it may be assumed that the courts will correctly decide. But every lawyer knows that there are useless and unnecessary contests brought against wills, with little or no ground therefor, and that sometimes these contests are brought for the purpose of compelling a settlement to which the contestant is not entitled. It is in preventing such contests that the enforcement of a no-contest provision in a will is of most value. Of course, any litigation must fail where evidence is lacking, and properly so, but a litigant need not be deterred from challenging a will which

manifestly, through forgery or otherwise, is not the will of the testator, and his counsel will so advise him.

I do not think we should disturb the doctrine announced by the majority in the Moran case. Such has been the established rule in this state for thirty-five years. Clients have been advised, and wills have been drawn, by lawyers who have relied upon the decision as a part of our established probate law; property interests have been settled and cases determined upon its authority. Useless and unwarranted litigation has been prevented by the fact that wills have contained this type of provision. Of course, a rule not well founded should not be followed merely on account of its age; also, no one can contend that there must not be changes from time to time, as general conditions change, or as public interests require. Yet neither of such reasons exists here. No public interests are affected; no change of conditions in relation to wills has arisen, nor is such change likely to arise. We cannot even say that the courts generally have taken a contrary view to such an extent as to persuade us to re-examine the question. I see no reason for departing from the position taken in the Moran case.

To throw aside our own established principle, supported by respectable authority, tends to affect the value of precedent, when it is the desire and duty of all of us to render legal principles and decisions more fixed, stable, and certain. I see no necessity, either in logic or precedent, for departing from a rule which is so clearly the established law of this state. I would affirm the decision of the district court as to Division II.

BLISS and WENNERSTRUM, JJ., join in this dissent.