IN THE COURT OF APPEALS OF IOWA

No. 24-1657
Filed November 13, 2025

IN THE MATTER OF THE ESTATE OF EUGENE F. BACHMAN, Deceased.

JEAN MARIE KELDERMAN, DIANE KAY HUNTER, and KAREN JOANE BACHMAN-ELLIS,
    Plaintiffs-Appellants,

vs.

LEON FAY BACHMAN, individually and in his capacity as Executor of the ESTATE OF EUGENE F. BACHMAN, and LEE FREDERICK BACHMAN, individually and in his capacity as Executor of the ESTATE OF EUGENE F. BACHMAN, CHERYL BACHMAN and ROBERT BACHMAN,
    Defendants-Appellees,

and

LYNN FRANCIS BACHMAN,
    Defendant/Interested Party.
_____

LEON FAY BACHMAN, individually and in his capacity as Executor of the ESTATE OF EUGENE F. BACHMAN and LEE FREDERICK BACHMAN, individually and in his capacity as Executor of the ESTATE OF EUGENE F. BACHMAN,
    Counterclaim Plaintiffs-Appellees.

vs.

JEAN MARIE KELDERMAN, DIANE KAY HUNTER, and KAREN JOANE BACHMAN-ELLIS,
    Counterclaim Defendants-Appellants.

_____

Appeal from the Iowa District Court for Linn County, Jason D. Besler, Judge.

Will contestants appeal the district court's orders dismissing their claims and declaring the will's *in terrorem* clause to be enforceable. **AFFIRMED.**

Alexander E. Wonio (argued) of Hansen, McClintock & Riley, Des Moines, and Tyler M. Smith of Smith Law Firm, PLC, Altoona, for appellants.

Kevin H. Collins (argued) of Nyemaster Goode, PC, Cedar Rapids, and Joel M. Williams of Nyemaster Goode, PC, Ames, for appellees.

Heard at oral argument by Greer, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

Eugene Bachman had eight children: Jean Kelderman, Diane Hunter, Karen Bachman-Ellis, Leon Bachman, Lee Bachman, Cheryl Bachman, Robert Bachman, and Lynn Bachman. In 2015, he executed a last will and testament that provided for those children. The will nominated two of his eight children, Leon and Lee, to serve as executors of his estate. It also included the following *in terrorem* clause:

> If any of my children brings an action to set aside or contest the terms of this Last Will and Testament, or threatens to do so, all provision for said child shall be null and void and such child shall receive the sum of Five Thousand Dollars ($5,000) in lieu and in place of any distribution to which he or she might be entitled hereunder.

Eugene died in July 2021. Leon and Lee began the probate process shortly thereafter by petitioning to probate the 2015 will.

Jean, Diane, and Karen filed a petition in the probate proceedings to contest the 2015 will by claiming Eugene lacked the necessary capacity to execute it and Eugene was subject to undue influence from his other children.[1] They also brought claims for tortious interference with inheritance; "fraud, constructive fraud, fraud at law and negligent misrepresentation"; and conspiracy. Along with their answer, Leon and Lee, acting as co-executors, brought a counterclaim seeking declaratory judgment to permit the estate to enforce the *in terrorem* clause of the will.

---

[1] The petition listed Leon, both individually and in his capacity as an executor; Lee both individually and in his capacity as an executor; Cheryl; Robert; Lynn; Delmar Steenhard; and Ricky Trier as defendants. Jean, Diane, and Karen later dismissed their claims against Delmar and Ricky without prejudice.

Leon and Lee then filed a motion for summary judgment seeking dismissal of Jean, Diane, and Karen's claims. Jean, Diane, and Karen resisted the motion. On April 30, 2024, the district court granted the motion for summary judgment "in full" and noted the only remaining issue was the counterclaim to enforce the will's *in terrorem* clause.

Leon and Lee then filed a motion for summary judgment on their counterclaim. Jean, Diane, and Karen also filed a motion for summary judgment on that issue. On September 27, the district court granted summary judgment in favor of Leon and Lee. Jean, Diane, and Karen filed notice of appeal on October 14. On appeal, they challenge both the April 30 and September 27 rulings.

## I. Appellate Jurisdiction

Before we can address the merits of Jean, Diane, and Karen's appellate claims, we must first decide if we have jurisdiction to do so. Iowa Rule of Appellate Procedure 6.101(1)(b) requires that an appellant file a notice of appeal "within 30 days after the filing of the final order or judgment." "The rules governing the time for appeal are mandatory and jurisdictional." *Brendeland v. Iowa Dep't of Transp.*, 14 N.W.3d 135, 142 (Iowa 2024) (cleaned up). And "[f]ailure to file a timely notice of appeal leaves us without subject matter jurisdiction to hear the appeal." *Id.* (citation omitted). Jean, Diane, and Karen did not appeal from the April 30 ruling granting summary judgment against them within thirty days. Instead, they only appealed after the September 27 ruling. Yet they raise arguments challenging the probate court's conclusions from the April 30 ruling as well.

Jean, Diane, and Karen argue that Iowa Rule of Appellate Procedure 6.101(1)(d) prevented them from appealing from the April 30 ruling on

summary judgment. Rule 6.101(1)(d) states, "An order disposing of some but not all of the parties or issues in an action may be appealed within the time for appealing from the judgment that finally disposes of all remaining parties and issues to an action, even if the parties' interests or the issues are severable." And because the April 30 ruling did not address the counterclaim seeking declaratory judgment, they reason it did not dispose of all of the issues and was not a final order from which they could appeal as a matter of right. They cite several non-probate cases supporting their contention that a ruling that does not resolve all issues is not a final appealable order. Then they point out that they filed their notice of appeal within thirty days of the district court's ruling on the counterclaim, which they argue resolved all the claims and permitted them to raise arguments relating to both summary judgment rulings on appeal.

Ordinarily they would be correct. But this is a probate case, governed by Iowa Code chapter 633 (2021). And Iowa Code section 633.36 provides that "[a]ll orders and decrees of the court sitting in probate are final decrees as to the parties having notice and those who have appeared without notice." "The purpose of this statute is to allow a prompt appeal from those orders and rulings on probate matters during the administration of the estate rather than at the time of the final report." *In re Est. of Troester*, 331 N.W.2d 123, 126 (Iowa 1983). That said, "[t]he legislature by the enactment of section 633.36 did not intend to provide finality and thus make appealable those procedural rulings that are found in probate proceedings such as orders concerning motions to continue and applications for a hearing." *Id.* But the April 30 was not procedural in nature—it resolved substantive issues raised by the parties. And Jean, Diane, and Karen do not even argue that

the April 30 ruling is a procedural ruling to which section 633.36 does not apply. *See id.* Instead, they ignore section 633.36.

While Jean, Diane, and Karen ignore section 633.36, we cannot. We understand that the April 30 ruling did not dispose of all the claims because the counterclaim remained unresolved. But it did "adjudicate[] the rights of the parties" as to the claims brought by Jean, Diane, and Karen. *Id.* at 125. And we have already held that a court's grant of partial summary judgment in a proceeding governed by chapter 633 amounted to a "final decision [that] could be appealed as a matter of right." *Strawn v. Strawn*, No. 13-1433, 2014 WL 4629877, at *2 (Iowa Ct. App. Sep. 17, 2014). As such, we conclude the April 30 ruling was a final ruling that was appealable as a matter of right. Because Jean, Diane, and Karen failed to timely appeal that ruling, we are without subject matter jurisdiction to consider any of their challenges stemming from the April 30 ruling.

## II.     Enforcement of the *In Terrorem* Clause

We limit our review to Jean, Diane, and Karen's challenge to the September 27 summary judgment ruling. With respect to that ruling, they argue that "the district court erred in holding as a matter of law that [they] are bound by the *in terrorem* clause in the 2015 will."

We review a court's decision granting summary judgment for the correction of errors of law. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013). Summary judgment may be granted if there is a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). We review the record in the light most

favorable to the nonmoving party. *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018).

An *in terrorem* clause, also known as a no-contest clause, "declares that one who attacks a will forfeits any interest in the decedent's estate or at least will suffer a limitation of his or her interest." *In re Est. of Workman*, No. 16-0908, 2017 WL 706342, at *1 (Iowa Ct. App. Feb. 22, 2017) (quoting 80 Am. Jur. 2d Wills § 1323 (2d ed. 2016)). However, a no-contest clause will not be enforced if the person contesting the will does so in good faith and with probable cause. *Id.* at *2 (citing *In re Est. of Cocklin*, 17 N.W.2d 129, 135 (Iowa 1945)). "Although our courts subscribe to two standards—good faith and probable cause—those standards overlap and have been applied interchangeably." *Id.*

> Persons have "probable cause for initiating civil proceedings against" others if they "reasonably believe in the existence of facts upon which the claim is based and reasonably believe that under such facts the claim may be valid at common law or under an existing statute, or so believe in reliance upon the advice of counsel received and acted upon."

*Id.* (cleaned up). "The 'good faith' requirement has been variously interpreted, with jurisdictions applying definitions that can be categorized along a continuum from a subjective to an objective standard . . . ." *Id.* (ellipsis in original) (citation omitted). Our courts consider whether the challenger acted on advice of counsel, whether the challenger understood the testator's intentions, and "the strength of the challenger's will contest," among any other relevant considerations. *Id.*

Jean, Diane, and Karen do not challenge whether they contested the will. Instead, they contend that they produced evidence that they contested the will in good faith and with probable cause, so the probate court erred in concluding

otherwise and enforcing the *in terrorem* clause. To support their assertion that they acted in good faith and with probable cause, they point to their own affidavits about their beliefs and perceptions of Eugene's heath, discussions they had together and with their mother, review of Eugene's medical records, and observations of Leon's interactions with Eugene. All three affidavits include the following statements:

1. I am a Plaintiff in the above-identified matter.

2. I believed the general allegations of the lawsuit filed in this matter when they were filed.

3. I do not understand legal terminology as a general matter, nor do I know or appreciate things like "burden of proof."

4. I was of the sincere belief that my father intended to leave to me, as inheritance, an equal share of the legacy he accumulated throughout his life as he told me this many times.

5. I was of the sincere belief that Defendants acted in concert to unduly influence my father into changing his longstanding plans with regard to his business and legacy.

6. In the latter stages of my father's life my brothers bragged to me that Leon wrongfully obtained all of my father's legacy and that he would gleefully extract all of my (and my siblings') money if we were to try and challenge his illicit actions. He said this to all of us.

7. Some of my siblings were frightened by the threats. Often our family would be gossiping and making offhand suggestions about things. It all led me to believe something illicit had been done.

8. I appreciated my father's unfortunate mental, physical, and emotional decline as he aged and that made him more susceptible to undue influence.

9. I was a part of the protracted guardianship/conservatorship proceedings and witnessed my father's decline as well as other people's authority and influence over my father.

10. I reviewed and appreciated medical documents that showed my father was not of a sound mind and was susceptible to undue influence when he executed the legal documents.

11. I heard many things from family and friends that led me to believe the Defendants were involved in a scheme to induce my father to act on his estate planning documents that was not legal, not what he wanted, and would otherwise support a Court's review of what took place.

12. There were many comments by my mother, siblings, family, and friends, that led me to believe my father's situation at the time he executed the estate planning documents needed to be explored. In addition to my brother's flaunting and bragging, this included statements from people who did not stand to inherit.

13. I elected to present these documents, claims, and facts of this lawsuit to legal counsel whom I understood was experienced in litigating cases of this nature.

14. We presented this matter to our legal counsel, including many documents from the prior proceedings, held multiple meetings prior to filing a lawsuit, they asked many questions, and we discussed all matters concerning our father and family estate planning, and it was advised we move forward with a lawsuit.

15. I showed my legal counsel the estate planning documents, including this reduction in my share should I seek to contest anything. We discussed this at length. Upon discussion, I was advised that the case was worth pursuing despite this part that suggested I would get less if I contested things.

16. This encouragement and legal counsel, along with my sincere beliefs, led me to move forward with the lawsuit despite the portion of the will that suggested I would get less if a chose to do so.

17. I did not conceal any facts or information from legal counsel when we met and discussed the possibility of a lawsuit.

18. I fully relied on the input of legal counsel in moving forward with this lawsuit including the fact they had litigated many cases of a similar nature.

Karen's affidavit also stated:

19. In addition, I consulted with legal counsel . . . during the guardianship/conservatorship proceedings.

20. [That attorney] communicated to me that he had sincere suspicions about the validity of the estate planning documents, but that a challenge to those would need to take place later.

21. Additionally, there were facts and circumstances during the guardianship and conservatorship proceedings that raised specific concern to both me and [the attorney]. This includes attempts to have the challenged documents sealed as well as a settlement offer Leon's counsel communicated to my counsel related to a contest of the estate planning documents while my father was still alive.

The problem with the affidavits is that they broadly reference gossip and family conjecture rather than provide any specific reasons why any of the affiants doubted the validity of the 2015 will or Eugene's capacity at the time it was executed. Nor do Jean, Diane, and Karen supplement these broad assertions with any sort of documentation about Eugene's cognitive status prior to executing the will other

than a reference to Eugene's 2015 cognitive evaluation, which purportedly prompted their concern. But that evaluation only noted a "mild cognitive impairment." And Leon and Lee point out that Karen believed Eugene had the mental capacity to deed her a house more than a year after he executed the 2015 will, undercutting her generalized concerns about Eugene's capacity to dispose of valuable property. And when deposed, Jean admitted she was not aware of evidence supporting her claim that Eugene lacked testamentary capacity. During her deposition, Diane conceded that she had no evidence that Eugene did not want to execute the 2015 will nor could she point to any evidence that Eugene was subject to undue influence at the time he executed the will.

While we understand that Jean, Diane, and Karen consulted with legal counsel about the possibility of challenging the will before so doing, they had no basis for their desire to challenge the will other than their general concerns and family gossip. In the absence of a genuine factual basis, we conclude their legal inquiry alone does not amount to probable cause or demonstrate good faith. Accordingly, we conclude that the probate court did not err by concluding that Jean, Diane, and Karen did not act in good faith or with probable cause. It correctly concluded that the *in terrorem* clause of the 2015 will should be enforced with respect to Jean, Diane, and Karen.

**AFFIRMED.**