**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 25, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GEORGE F. KLECAN,

      Plaintiff Counter
      Defendant - Appellant,

v.

JANET SANTILLANES, as Trustee of the
Eugene E. Klecan and Jane F. Klecan
Revocable Trust dated March 11, 1999 as
Amended,

      Defendant Counter
      Plaintiff - Appellee.

No. 15-2171
(D.C. No. 1:15-CV-00016-WJ-KBM)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **PORFILIO**, and **BALDOCK**, Circuit Judges.
_____

    George F. Klecan filed this action against his sister, Janet Santillanes, who is
the Trustee of the Eugene E. Klecan and Jane F. Klecan Revocable Trust ("Trust"), a
conventional gift trust created by their parents. Mr. Klecan asserted breach-of-trust
claims and sought declaratory and injunctive relief and damages. After the Trustee

_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

moved for partial summary judgment, the court held that Mr. Klecan had, by his conduct, absolutely forfeited his one-eighth share of the Trust property under the express terms of the Trust. The court further held that its ruling on the forfeiture issue necessarily dispensed with Mr. Klecan's other claims, which the court dismissed. The court then entered judgment disposing of the case in its entirety. Mr. Klecan appeals the district court's judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background

Mr. Klecan's parents, Eugene and Jane Klecan ("Grantors"), created the Trust in 1999 under New Mexico law. Grantors designated Ms. Santillanes to serve as Trustee of the Trust after their deaths. The Trustee, Mr. Klecan, and their six siblings are the named beneficiaries of the Trust, and each is entitled to receive a one-eighth share of the Trust property. The primary asset in the Trust was an apartment complex in Fort Worth, Texas, known as La Plaza Apartments, where Mr. Klecan lived and worked as the apartment manager for 30 years.

The Trust originally provided in § 8.1 for the formation, upon the death or incapacity of the Grantors, of a Trust Advisory Committee ("TAC") made up of all eight beneficiaries. The Trust granted the TAC the power to direct the Trustee regarding the sale of real property held in the Trust, with one exception: if Mr. Klecan was residing in and managing La Plaza Apartments, he had the right to veto any sale of the apartment complex for five years after the death of both Grantors. In 2005, however, Grantors amended the Trust (the "Second

2

Amendment"), limiting the TAC to three members: the Trustee and two of Mr. Klecan's other siblings. The Second Amendment also deleted the original provision granting Mr. Klecan a five-year veto power over the sale of La Plaza Apartments.

The Trust includes what is commonly referred to as a no-contest provision. Section 14.5 ("Contestability Clause") provides as follows, in relevant part:

> 14.5    Contestability
>
>    A.    The beneficial provisions of this trust agreement . . . are intended to be in lieu of any other rights, claims, or interests of any nature, whether statutory or otherwise, except bonafide predeath debts, which any beneficiary of this trust may have against or in . . . the properties in this trust. Accordingly, if any beneficiary of this trust . . . asserts any claim whatsoever (except bonafide predeath debts), statutory election, or other right or interest against or in . . . any properties of this trust, other than pursuant to the express terms hereof . . ., directly or indirectly contests, disputes, or calls into question, before any tribunal, the validity of this instrument . . ., then such beneficiary shall thereby absolutely forfeit any beneficial interests which such beneficiary might otherwise have under this instrument . . . and the interests of the other beneficiaries hereunder shall thereupon be appropriately and proportionately increased. In addition, all of the provisions of this instrument, to the extent that they confer any benefits, powers, or rights upon such claiming, electing or contesting beneficiary, shall thereupon become absolutely void and revoked . . . .
>
>    B.    Subparagraph A shall not apply to any beneficiary who (i) either contests this trust agreement . . . or institutes other proceedings relating to a governing instrument . . . if probable cause exists for instituting proceedings, (ii) participates solely as a witness in any proceeding involving a governing instrument . . . or (iii) appears in any capacity in any proceeding solely for the construction of a governing instrument.

Aplt. App., Vol. I at 48.

The Trust was revocable in its entirety until Eugene Klecan died in February 2007. After Jane Klecan died in 2013, the TAC began efforts to sell La Plaza

3

Apartments. The TAC hired the Trustee's husband, Abraham Santillanes, to oversee repairs and improvements at the apartment complex. The Grantors had previously hired Mr. Santillanes to do similar work at other apartment properties. Because the TAC believed that Mr. Klecan was interfering with the work needed to prepare La Plaza Apartments to be sold, the Trustee terminated his position as apartment manager and asked him to vacate the manager's apartment and move to another apartment in the complex. Mr. Klecan refused to move and, according to the Trustee, interfered with the business of running the apartment complex. The Trustee caused La Plaza Apartment Partnership ("Partnership"), an entity created to own La Plaza Apartments, *see id.* at 143, to file an eviction proceeding against Mr. Klecan in Texas state court ("Eviction Action").

Mr. Klecan filed an answer in the Eviction Action challenging the Partnership's standing to bring the action on the ground that the Second Amendment to the Trust "had no legal effect because it sought to amend an irrevocable Trust B controlling the La Plaza Apartments." *Id.*, Vol. III at 281. He maintained that, "[b]ecause the Second Amendment had no legal effect, the only way to authorize [his] eviction [was] a majority vote of the eight beneficiaries, including [Mr. Klecan], constituting the 'Trust Advisory Committee' in Section 8.1 of the Trust." *Id.* Thus, Mr. Klecan contended in the Eviction Action that the Second Amendment was invalid and that the original § 8.1 of the Trust, which provided for his five-year veto power over the sale of La Plaza Apartments and his membership in the TAC, remained in effect.

4

The Partnership prevailed in the Eviction Action. After Mr. Klecan appealed that ruling, the parties settled the dispute when Mr. Klecan agreed to move into another apartment at La Plaza Apartments.

Following the sale of La Plaza Apartments for $2.9 million in 2014, the Trustee prepared a proposed schedule of distribution for each beneficiary, setting forth his or her one-eighth share of the Trust property minus any advances the beneficiary had received. All beneficiaries but Mr. Klecan approved the distribution schedules and signed releases of claims against the Trust. Upon signing a release, the Trustee distributed to each beneficiary a one-eighth share of the proceeds from the sale of La Plaza Apartments less an amount held in reserve for legal and other expenses related to the claims that Mr. Klecan had asserted and threatened to assert.

At the time of these distributions, the Trustee believed that, by his conduct, Mr. Klecan had forfeited any beneficial right or interest in the Trust under the Contestability Clause. The Trustee informed Mr. Klecan of her contention regarding his forfeiture, but nonetheless provided him with a proposed distribution deducting $70,000 in advances he had received on his one-eighth share, plus an additional deduction for costs that Mr. Klecan had caused the Trust to incur, including the cost of the Eviction Action. Mr. Klecan objected to this proposed distribution and refused to sign a release of claims to obtain his distribution.

Mr. Klecan instead filed this action against the Trustee, alleging that she had breached her duties of good faith and loyalty by threatening his disinheritance; refusing to unconditionally distribute his one-eighth share of the Trust property;

5

distributing Trust shares to other beneficiaries but not to him; threatening him with legal action; and engaging in self-dealing with other family members. Mr. Klecan asked the district court to remove Ms. Santillanes as Trustee or, alternatively, to order the Trustee to distribute his share of the Trust property, provide an accounting, and stop holding Trust property in reserve for a legal defense fund. He also sought a declaration that he had not triggered the Trust's Contestability Clause. The Trustee filed a counterclaim asking the district court to declare that Mr. Klecan had forfeited his interest in the Trust, or alternatively, to declare the amount that the Trustee should distribute to Mr. Klecan under the terms of the Trust.

The Trustee moved for partial summary judgment, arguing that Mr. Klecan had forfeited his share of the Trust assets under the terms of the Contestability Clause by disputing the validity of the Trust or asserting a claim against properties of the Trust. The district court held, based on the undisputed facts, that Mr. Klecan had forfeited his inheritance under the Trust. It construed the Contestability Clause as providing that a beneficiary's one-eighth share of the Trust property is in lieu of any other claim, right, or interest of any nature that a beneficiary might have against or in the Trust property. The court reasoned that the Trust created an either/or option for a beneficiary: he could accept his allotted one-eighth share and give up any and all other claims, rights, or interests in the Trust property, or he could give up his one-eighth share and pursue other claims. But a beneficiary "cannot have it both ways." Aplt. App., Vol. III at 376.

6

In holding that Mr. Klecan had forfeited his share of the Trust property, the district court identified the following actions as triggering the Contestability Clause: (1) Mr. Klecan challenged the validity of the Second Amendment to the Trust in the Eviction Action; (2) he alleged willful misconduct, negligence, and breach of trust against the Trustee in this action, seeking damages of at least $453,000, which is more than his one-eighth share of the Trust; (3) he asserted other rights outside the express terms of the Trust, such as a right to control or veto the sale of La Plaza Apartments, essentially disputing the validity of the Second Amendment; and (4) he contested the Grantors' selection of Ms. Santillanes as the Trustee.

Having decided the forfeiture issue in the Trustee's favor and granted her summary judgment on two of Mr. Klecan's counts, the court dismissed the remainder of his claims with prejudice. It then entered a final judgment disposing of the case in its entirety.

## II.    Discussion

"We review the district court's grant of summary judgment de novo, applying the same standard employed by the district court." *Wetherill v. Bank IV Kansas, N.A.*, 145 F.3d 1187, 1191 (10th Cir. 1998). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]o defeat a summary judgment motion, the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts." *Wetherill*, 145 F.3d at 1191 (internal quotation marks omitted). "In applying this standard, we

7

must examine the factual record and reasonable inferences therefrom in the light most favorable to the non-moving/opposing party. If no dispute exists concerning a genuine issue of material fact, we then determine whether the district court correctly applied the substantive law." *Id.* (citation and internal quotation marks omitted).

## A.     No-Contest Provisions Under New Mexico Law

The New Mexico Supreme Court has stated that no-contest clauses "serve to protect estates from costly and time-consuming litigation and they tend to minimize family bickering over the competence and capacity of testators, and the various amounts bequeathed." *Seymour v. Davis (In re Seymour)*, 600 P.2d 274, 278 (N.M. 1979).[1] No-contest provisions "are valid and enforceable in New Mexico, but they are not effective to disinherit a beneficiary who has contested a will in good faith and with probable cause to believe that the will was invalid." *Id*.

Under New Mexico law, no-contest clauses are generally construed narrowly and strictly against forfeiture. *See Redman-Tafoya v. Armijo*, 126 P.3d 1200, 1211 (N.M. Ct. App. 2005). But "the paramount rule" is still to ascertain and effectuate the intent of the Grantor. *See id.* at 1211. "Whether there has been a 'contest' within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used." *Id.* at 1212 (internal quotation marks and alteration omitted).

---

[1] The parties do not dispute that New Mexico case law concerning the construction of no-contest clauses in wills also applies to no-contest clauses in trusts.

Under the no-contest clause at issue in *Redman-Tafoya*, a beneficiary forfeited her share of the estate by contesting or attacking the will or any of its provisions "in any manner." *Id.* at 1202. The trial court broadly construed this provision, holding that a beneficiary's actions, including her refusal to cooperate with the personal representative and certain claims that she filed in litigation, constituted attacks on the validity of the will. *See id.* at 1205. In reversing these findings on appeal, the appellate court set forth a "default construction for relatively general no-contest clause language" like that found in the will in *Redman-Tafoya*. *Id.* at 1215. It said that such clauses

> should be read as penalizing only beneficiaries who, in the absence of good faith and probable cause, seek through a legal proceeding to invalidate a will or to invalidate a provision of a will on grounds such as lack of testamentary capacity, fraud, undue influence, improper execution, forgery, or subsequent revocation by later document, or on grounds that effectively nullify a material provision in the will.

*Id.* at 1212. The court adopted this default construction to promote predictability because "[l]egal proceedings to invalidate a will or to invalidate or nullify a provision in a will are more easily recognizable than other conduct or actions that might be perceived as thwarting some less clear or unexpressed intent of the testator." *Id.* at 1213. But the court stressed that "[a] testator is still free to disinherit beneficiaries on any ground that does not violate public policy and that clearly and specifically expresses what type of legal proceedings, or what type of other conduct and actions, the testator intends to discourage through the threat of disinheritance." *Id.* at 1215.

9

Applying its default construction of the no-contest clause at issue in *Redman-Tafoya*, the court held that none of the beneficiary's conduct could be considered a contest of or an attack on the will. *Id.* at 1214. It noted that she did not "outright seek to invalidate the Will or to invalidate any provision of the Will." *Id.* at 1211. More specifically, her lack of cooperation was not an attack on the will. *See id.* at 1214. Nor did the claims she asserted in litigation trigger the no-contest clause. She had filed a counterclaim in a quiet-title action seeking to disinherit other beneficiaries, and she had attempted in the probate proceeding to remove the personal representative. The court held that these claims were authorized by the will, rather than an attack on the validity of any provision of the will. *See id.*

Against this legal back-drop, Mr. Klecan argues that the district court erred in holding that, by his conduct, he forfeited his share of the Trust under the Contestability Clause. He asserts that he did not trigger that clause by defending the Eviction Action or by bringing this action. He further argues that the district court ignored subparagraph B of the Contestability Clause and New Mexico law, which preclude a forfeiture if the beneficiary acted in good faith and with probable cause. Mr. Klecan asks us to reverse the district court's forfeiture ruling and remand with instructions to determine his rights under the Trust and his claims against the Trustee.

**B.      By Asserting the Invalidity of the Second Amendment in the Eviction Action, Mr. Klecan Forfeited his One-Eighth Share of the Trust Property**

The Contestability Clause provides that a beneficiary "shall . . . absolutely forfeit any beneficial interests which such beneficiary might otherwise have under

10

this instrument" if he "directly or indirectly contests, disputes, or calls into question, before any tribunal, the validity of this instrument." Aplt. App., Vol. I at 48. Mr. Klecan advances several theories why he did not trigger the Contestability Clause when he asserted in the Eviction Action that the Second Amendment to the Trust was invalid.

### 1. Mr. Klecan did not Institute Legal Proceedings

Mr. Klecan maintains that, according to New Mexico law and under the specific language of the Contestability Clause, a no-contest provision is *only* triggered when the beneficiary institutes the legal proceedings in which he contests the validity of a trust. Because he was the defendant in the Eviction Action, he therefore contends that he did not forfeit his inheritance by asserting in that action that the Second Amendment was invalid.

Mr. Klecan first points to the holding in *Redman-Tafoya* that the beneficiary's counterclaim in a quiet-title action, by which she sought to disinherit other beneficiaries, was not a "contest" under the no-contest clause in a will. *See* 126 P.3d at 1214. We disagree that the holding in *Redman-Tafoya* supports the proposition that Mr. Klecan asserts. The court held that the beneficiary's disinheritance claim did not trigger the no-contest clause because the claim was authorized under the will and did not attack the validity of the will. *See id.* The court also emphasized that the disinheritance claim "never approached adjudication" because the beneficiary did not ultimately pursue that claim. *Id.* ("We hold that Tafoya's short-lived and untested disinheritance claim . . . do[es] not constitute [a] contest[]."). Thus, the court did not

11

conclude, as Mr. Klecan asserts, that the beneficiary had not triggered the no-contest clause because she was the counterclaimant, rather than the plaintiff, in the quiet-title action.

Here, Mr. Klecan admittedly did attack the validity of a provision of the Trust in the Eviction Action by arguing that the Second Amendment was invalid because it was executed after the Trust became irrevocable. Thus, unlike the petitioner in *Redman-Tafoya*, and consistent with the language of the Contestability Clause, he contested, disputed, and called into question the validity of an amendment to the Trust before a tribunal. And Mr. Klecan has not argued or shown that his contention was "untested" in the Eviction Action.

Mr. Klecan alternatively argues that the language of the Contestability Clause limits the type of "contest" that triggers a forfeiture to affirmative rather than defensive actions by a beneficiary. He points to subparagraph B of the clause, which provides an exception to the forfeiture language in subparagraph A under certain circumstances. Subparagraph B provides, in relevant part, that "[s]ubparagraph A shall not apply to any beneficiary who (i) either contests this trust agreement . . . *or institutes other proceedings* relating to a governing instrument . . . if probable cause exists *for instituting proceedings*." Aplt. App. Vol. I at 48 (emphasis added). Based on subparagraph B's reference to "instituting proceedings," Mr. Klecan argues that a forfeiture can only occur under subparagraph A if the beneficiary instituted proceedings to contest the validity of the Trust.

This contention ignores the language of subparagraph A, which is not so limited. It provides that a beneficiary forfeits his interest in the Trust if he "directly or indirectly contests, disputes, or calls into question, before any tribunal, the validity of this instrument." Aplt. App., Vol. I at 48. Although the Grantors here chose to require that a contest be advanced "directly or indirectly . . . before any tribunal," they did not specify that, for forfeiture to result, the contesting beneficiary must be the party who filed the action. In *Redman-Tafoya*, the court stated that "limited proscriptions in a no-contest clause specifically describing conduct intended by the testator to trigger disinheritance can be enforced." 126 P.3d at 1213. We are not persuaded that the language in subparagraph B has the limiting effect that Mr. Klecan asserts on the forfeiture language Grantors chose to use in subparagraph A.

### 2. Mr. Klecan did not Seek to Expand his One-Eighth Share of the Trust Property in the Eviction Action

Mr. Klecan next claims that his defense in the Eviction Action did not trigger the Contestability Clause because he did not seek to expand his one-eighth share of the Trust property in that action. He maintains that the principal issues in that action—whether he could avoid eviction and what rent he owed—were "largely peripheral to the trust." Aplt. Opening Br. at 14. But as Mr. Klecan acknowledges, *see id.* at 13, the Contestability Clause is triggered by asserting certain claims against the Trust property *or* by contesting the validity of the Trust instrument. His attempt to invalidate the Second Amendment triggered the latter prohibition regardless of whether he asserted a claim to expand his one-eighth share of the Trust property.

13

### 3. Mr. Klecan did not Contest the Validity of the Original Trust Instrument

Mr. Klecan also contends that, because the Contestability Clause refers only to challenges to the validity of "this instrument," i.e., the Trust, and does not mention later amendments, he did not trigger the clause by contesting the validity of the Second Amendment in the Eviction Action. The Trustee argues, and Mr. Klecan admits, that he did not make this argument in the district court.

"An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012) (internal quotation marks omitted). We will reverse based on a new issue raised for the first time on appeal only if the appellant satisfies the plain-error standard of review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). In a civil case, this burden is "extraordinary" and "nearly insurmountable." *Id.*

Mr. Klecan fails to acknowledge the applicability of this review standard. In his reply brief he argues that the Trustee has not shown any prejudice from his failure to raise this contention in the district court; he urges us not to uphold the district court's ruling on the basis that he forfeited an argument; and he responds to the Trustee's argument why the Contestability Clause applies to amendments to the Trust, disputing her reliance on a New Mexico statute and citing California case law. Because Mr. Klecan fails to show "the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or

public reputation of judicial proceedings" *id.* at 1128, we do not reach this contention, *see Somerlott*, 686 F.3d at 1151-52 (declining to reach argument where appellant did not carry her burden to demonstrate plain error).

### 4. Mr. Klecan's Contention that he Challenged the Validity of the Second Amendment in Good Faith and with Probable Cause

Lastly, Mr. Klecan argues that the district court ignored the probable-cause exception to forfeiture in subparagraph B of the Contestability Clause, as well as the good faith/probable-cause exception under New Mexico law, *see Seymour*, 600 P.2d at 278 (holding no-contest provisions "are not effective to disinherit a beneficiary who has contested a will in good faith and with probable cause to believe that the will was invalid"); *see also* N.M. Stat. Ann. § 45-2-517 (codifying probable-cause exception to no-contest provisions). Mr. Klecan argued in the district court that, by relying on the advice of his counsel, he acted in good faith and with probable cause in challenging the validity of the Second Amendment in the Eviction Action. The district court noted his asserted reliance on counsel's advice, but concluded that he was nonetheless bound by his counsel's challenge to the Second Amendment. Mr. Klecan contends that the district court failed to address the merits of his claim of good faith and probable cause.

Mr. Klecan argues these issues raise questions of fact for the jury, citing *Hamel v. Hamel*, 299 P.3d 278, 290 (Kan. 2013) ("Whether probable cause exists is a question of fact."); *see also In re Estate of Gibbons*, 451 S.W.3d 115, 122 (Tex. App. 2014) ("The trial evidence raised genuine fact issues regarding [good faith and

15

probable cause], and the trial court did not err in submitting these issues to the jury."); *Haley v. Pickelsimer*, 134 S.E.2d 697, 701 (N.C. 1964) (noting lack of factual determination whether a will contest was instituted in good faith and with probable cause). We assume for purposes of his appeal argument that New Mexico courts would likewise treat good faith and probable cause as questions of fact.

Probable cause exists when "there was evidence that would lead a reasonable person, properly informed and advised, to conclude that there was a substantial likelihood that the challenge would be successful." Restatement (Third) of Property (Wills & Donative Transfers) ("Restatement") § 8.5 cmt. c. To avoid summary judgment, Mr. Klecan was required to come forward with evidence demonstrating a genuine dispute whether he challenged the validity of the Second Amendment in the Eviction Action in good faith and with probable cause.

Mr. Klecan asserts that he has always acted in good faith and with probable cause. Regarding his assertion in the Eviction Action that the Second Amendment was invalid because it was executed after the Trust became irrevocable, he maintains that he relied on his counsel's advice and argues that he cannot be faulted for any legal error. *See* Aplt. App., Vol. III at 331 (disclaiming his counsel's legal argument, while asserting that he was defending himself from an unlawful eviction and was strictly following his counsel's advice). Mr. Klecan fails, however, to point to any evidence that would lead a reasonable person, who was properly informed and advised, to conclude that his challenge to the Second Amendment on that basis would be successful.

16

Mr. Klecan further avers that his counsel "may have had reason . . . to believe that the Second Amendment to the Trust might be invalid possibly due to [his] father Eugene Klecan having been diagnosed with Dementia and Alzheimer's prior to signing it." *Id.* at 352. He does not say how "may," "might," and "possibly" add up to probable cause. Mr. Klecan's noncommittal statement fails to demonstrate that either he or his counsel could have contested the Second Amendment in good faith and with probable cause based on his father's incapacity. Nor is there any indication that he ever asserted this basis for challenging the validity of the Second Amendment in the Eviction Action.

## III.    Conclusion

We agree with the district court's declaration, based on an absence of disputed fact issues, that Mr. Klecan forfeited his one-eighth share of the Trust property by contesting the validity of the Second Amendment in the Eviction Action. We therefore affirm the court's grant of partial summary judgment to the Trustee without addressing the Trustee's other forfeiture contentions.[2] Because Mr. Klecan does not

---

[2] In addition to Mr. Klecan contesting the validity of the Second Amendment in the Eviction Action, the Trustee argues that his other actions, including the claims he raised in this action, also triggered a forfeiture under the Contestability Clause. We need not and do not reach these contentions.

challenge the district court's dismissal of his remaining claims based on its forfeiture ruling, we affirm the district court's judgment disposing of the entire case.

Entered for the Court


Bobby R. Baldock
Circuit Judge