**IN THE COURT OF APPEALS OF IOWA**

No. 16-0908
Filed February 22, 2017

IN THE MATTER OF THE ESTATE OF
MARGARET E. WORKMAN, Deceased,

**DENNIS WORKMAN,**
          Plaintiff-Appellant,

**vs.**

**GARY WORKMAN, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF MARGARET E. WORKMAN,**
          Defendant-Appellee,

**and**

**LAVERNE WORKMAN, CYNTHIA NOGGLE, RANDY NOGGLE, MINDY (NOGGLE) SHERWOOD, CHRISTINE (WORKMAN) THOMPSON and JEFFREY WORKMAN,**
          Defendants.
_____

          Appeal from the Iowa District Court for Scott County, John D. Telleen, Judge.

          Dennis Workman appeals the district court's granting of several posttrial motions. **AFFIRMED.**

          Eric M. Updegraff of Hopkins & Huebner, P.C., Des Moines, for appellant.

          Daniel P. Kresowik of Stanley, Lande & Hunter, P.C., Davenport, for appellee.

          Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

Margaret Workman executed several wills over her lifetime. Her final will, signed in 2007, contained a "no contest" provision that mandated revocation of the shares of any beneficiary who contested the will.

After Margaret died, her son Dennis challenged the will on the ground that (1) his mother lacked testamentary capacity and (2) his brother, Gary, exercised undue influence over her. Dennis amended his will-contest petition to add his adopted minor child, but the district court dismissed the child shortly thereafter.

The court granted Gary summary judgment on the lack-of-testamentary-capacity claim, leaving the undue-influence claim for trial. During trial, Gary moved for a directed verdict, which the district court denied. A jury found in favor of Gary.

Gary filed applications (1) to revoke Dennis' shares pursuant to the no contest provision, (2) for approval of attorney fees, and (3) for ratification of accounting, disbursements, and farm leases. The district court granted all three motions. Dennis appealed.

## I. No Contest Provision

"A 'no contest' . . . clause declares that one who attacks a will forfeits any interest in the decedent's estate or at least will suffer a limitation of his or her interest." George Blum et al., 80 Am. Jur. 2d <u>Wills</u> § 1323 (2d ed. 2016). "Its purpose is to deter challenges to a will, that is, to dissuade the devisees of wills from challenging bequests made therein." *Id.*

Margaret's 2007 will contained the following no contest provision:

> If any beneficiary under this Will in any manner, directly or indirectly, contests the validity of this instrument, or any disposition under this Will, or any other trust created by me, by filing suit against my executor, the trustees under any trust, any share or interest given to such beneficiary under the provisions of this Will is revoked and shall be disposed of in the same manner provided under this Will as if that contesting beneficiary and all descendants of that beneficiary had predeceased me.

Gary argued that because Dennis sought to contest his mother's will and amended the petition to add his minor child, neither he nor his child could recover anything under the will. After considering counsels' arguments, the district court found the no contest provision enforceable and concluded, "Every share or interest given to Dennis or [his child] under the 2007 Will and 2008 Codicil are revoked and shall be disposed of in the same manner provided under the 2007 Will and 2008 Codicil as if Dennis and [his child] had preceded Margaret Workman." On appeal, Dennis argues he satisfied common law factors for deeming the will contest provision unenforceable.

States have expressed differing views on the enforceability of no contest provisions. *Compare* Fla. Stat. § 732.517 (2016) ("A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable."), *with Sharp v. Sharp*, 447 S.W.3d 622, 626 (Ark. Ct. App. 2014) (noting "Arkansas courts have recognized the validity of no-contest clauses dating back to at least 1937"). The Uniform Probate Code stakes out a middle ground, authorizing no contest provisions but allowing legal action to contest the will if there is probable cause for the filing. *See* Unif. Probate Code § 2-517 (amended 2010) ("A provision in a will purporting to penalize an interested person for contesting the will or instituting

other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings.").

Although the Iowa legislature has "selectively incorporated" other provisions of the Uniform Probate Code, it has not adopted section 2-517. *See* Iowa Code ch. 633 (2016); *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 813-14 (Iowa 2011). We infer from the legislature's failure to incorporate the uniform code's no contest provision that it elected to leave intact longstanding case precedent on the subject. *Boesen*, 805 N.W.2d at 813.

That precedent differs from the uniform probate code provision in one key respect: the uniform provision renders the no contest provision unenforceable only if there exists probable cause to contest the will, whereas our common law holds the provisions "will not be enforced against one who contests the will *in good faith* and for probable cause." *In re Estate of Cocklin*, 17 N.W.2d 129, 135 (Iowa 1945) (emphasis added); *see also Geisinger v. Geisinger*, 41 N.W.2d 86, 93 (Iowa 1950) (same).

Although our courts subscribe to two standards—good faith and probable cause—those standards overlap and have been applied interchangeably. *See Parker v. Benoist*, 160 So. 3d 198, 208 (Miss. 2015) ("[M]any of the factors which support a finding of good faith support a finding of probable cause, and *vice versa*.").

Persons have "probable cause for initiating civil proceedings against" others if they "reasonably believe[] in the existence of facts upon which [the] claim is based and reasonably believe[] that under such facts the claim may be valid at common law or under an existing statute, or so believe[] in reliance upon

the advice of counsel received and acted upon." *Geisinger*, 41 N.W.2d at 93 (citing Restatement of the Law, Torts, § 675); Restatement (Third) of Property: Wills and Other Donative Transfers § 8.5 cmt. c (2003) ("Probable cause exists when, at the time of instituting the proceeding, there was evidence that would lead a reasonable person, properly informed and advised, to conclude that there was a substantial likelihood that the challenge would be successful. A factor that bears on the existence of probable cause is whether the beneficiary relied upon the advice of independent legal counsel sought in good faith after a full disclosure of the facts."); *see also In re Estate of Shumway*, 9 P.3d 1062, 1066 (Ariz. 2000) (quoting Restatement standard); *Parker*, 160 So. 3d at 206 (same).

"The 'good faith' requirement has been variously interpreted, with jurisdictions applying definitions that can be categorized along a continuum from a subjective to an objective standard . . . ." *Wilson v. Dallas*, 743 S.E.2d 746, 759 (S.C. 2013). Our precedent focuses on the challengers' full disclosure to their attorneys, the attorneys' advice, and whether the challengers acted on the advice. *Geisinger*, 41 N.W.2d at 92; *Cocklin*, 17 N.W.2d at 136; *see also Winningham v. Winningham*, 966 S.W.2d 48, 52 (Tenn. 1998). The court also has examined whether the challenger understood the testator's intentions, whether the testator's conduct following execution of the will was consistent with the stated intentions, and whether the testator's mental capacity made the testator susceptible to suggestions. *See Geisinger*, 41 N.W.2d at 92 (discussing testator's intent as reflected in original will and inconsistent codicil, failing physical and mental condition of the testator, and susceptibility to influence); *see also Parker*, 160 So. 3d. at 208 (discussing clear intent of testator, her failing

health, and actions inconsistent with her will). Finally, our good faith precedent gauges the strength of the challenger's will contest action by asking whether "a jury question was presented on the issues" and how long the jury deliberated. *Cocklin*, 17 N.W.2d at 136.

The final two factors—whether there is a jury question and the length of deliberation—could be read as requiring proof of the underlying claim. These factors seem at odds with the Restatement's prescription to examine the facts at the time the will contest action is filed. *See Wilson*, 743 S.E.2d at 760 (stating "proof of a claim is not required"); Restatement (Third) of Property: Wills and Donative Transfers § 8.5 cmt. c. On closer examination, we believe these factors bear on whether a challenger's subjective belief that he or she is filing a will contest in good faith is objectively reasonable. For example, if a challenger introduces no evidence of undue influence, the challenger's belief in the viability of the action at the time it was filed could be deemed unreasonable. Conversely, if the challenger introduces overwhelming evidence of undue influence, the challenger's belief could be deemed reasonable. These factors comport with an objective good-faith standard. *See Wilson*, 743 S.E.2d at 760 ("The question is not whether there was in fact undue influence, but whether the parties could in good faith reasonably believe so . . . . [S]omething more than a subjective belief or a mere allegation is necessary . . . .").

With these definitions in mind, and recognizing the probable cause and good-faith standards overlap, we will examine the factors underlying the standards together. Both sides state our standard of review is de novo. We will apply this standard.

*Advice of Counsel.* Dennis argues he acted on the advice of counsel because an attorney "appeared and tried th[e] [undue influence] case" and the attorney had an ethical obligation to "avoid filing and/or prosecuting cases that lack probable cause." If this were enough, the probable-cause and good-faith exceptions would eat up the rule permitting enforcement of no contest provisions. *See* Restatement (Third) of Property: Wills and Donative Transfers § 8.5 cmt. c ("The mere fact that the person mounting the challenge was represented by counsel is not controlling, however, since the institution of a legal proceeding challenging a donative transfer normally involves representation by legal counsel."); *see also Winningham*, 966 S.W.2d at 53 ("[I]f the mere advice of counsel can be regarded as probable cause for instituting proceedings to contest a will, there would be none without cause, and in every instance such a [forfeiture] clause as the testatrix inserted in hers would be nugatory." (quoting *In Re Friend's Estate*, 58 A. 853, 857 (Pa. 1904)). We are convinced more was required. Dennis had to establish he informed counsel of the no contest provision and counsel advised him to proceed with the will contest action notwithstanding the no contest provision. *See Geisinger*, 41 N.W.2d at 93 ("[I]t is usually a question of fact whether the advice was sought in good faith, after a full and fair disclosure of all matters bearing on the case and whether it was followed in good faith and with the belief there was good cause for the prosecution."); *see also Klecan v. Santillanes*, 643 F. App'x 743, 751 (10th Cir. 2016) (placing burden on the objector "to point to any evidence that would lead a reasonable person, who was properly informed and advised, to conclude that his challenge to the [will] . . . would be successful"); *In re Estate of Peppler*, 971 P.2d 694, 697

(Colo. Ct. App. 1998) ("One factor which bears on the existence of probable cause is that the beneficiary relied upon the advice of disinterested counsel sought in good faith after a full disclosure of the facts."); *In re Estate of Beers*, No. 61979-9-I, 2009 WL 187862, at *4 (Wash. Ct. App. Jan. 26, 2009) ("If a contestant brings an action or defends one on the advice of counsel, after fully and fairly disclosing all material facts, he or she will be deemed to have acted in good faith and for probable cause."); *In re Kubicks' Estate*, 513 P.2d 76, 80 (Wash. Ct. App. 1973) ("[A] suit such as this brought on advice of counsel is persuasive of the bona fides of the suit. We are not prepared to say, however, that such result is conclusive where the guardian has not been given an opportunity to establish what facts were before counsel when and if he advised the suit in the face of the [no contest] clause.").

Dennis introduced no evidence that he informed counsel of the no contest provision and that counsel advised him to file a will contest action in the face of the no contest provision. He testified to going forward with the action even though he might "get nothing and be disinherited" because he did not "feel that the [w]ill" represented his "mother's wishes." But he did not call any of his several attorneys to opine on the reasonableness of this belief.

We recognize Dennis did not have to present this type of evidence to prove the underlying undue influence claim, which was the only claim before the jury. *See In re Estate of Bayer*, 574 N.W.2d 667, 671 (Iowa 1998) (setting forth elements of undue influence claim). But his brother defended the claim by relying on the no contest provision and the circumstances that led to its inclusion in Margaret's wills. At that point, it was incumbent upon Dennis to address the

good faith and probable cause exceptions to the no contest provision. *See Womble v. Gunter*, 95 S.E.2d 213, 218 (Va. 1956) (stating good faith and probable cause as a defense to a no contest provision "must be affirmatively established by the parties making the allegation"). Because Dennis failed to do so, Gary's extensive evidence about the no contest provision stood unchallenged.

*Testator's Intent.* Dennis's failure to present evidence that he sought counsel's advice is particularly notable in light of Margaret's clearly expressed intent to limit his access to her assets. According to one of her attorneys, Margaret and her husband were concerned about "the difficulty [Dennis] had with some debt problems and similar issues." Another attorney reported Dennis experienced "intense pressure from a number of creditors" and had "a number of claims . . . against him personally." This attorney stated Margaret was "always concerned about the farmland" and wanted "to make sure that no third party ever [was] able to acquire any interest in or be the [beneficiary] of the farmland."

As early as 1985, Margaret withdrew "[a]ll benefits" provided for Dennis in her 1983 will, created a trust administered by his siblings, and passed his benefits to them as trustees. She also began including no contest provisions in her wills specifically to stave off a will contest by Dennis. A will executed in 1987 included the following broadly-worded no contest provision:

> Should any child of mine contest this Will or openly complain of provisions made for him or her, either directly or under a trust, all such benefits for that person are withdrawn and the assets or benefits distributed to those who have not made protest.

A 1995 will went even further, stating Dennis would "have no right to receive principal from" the trust except in the discretion of the trustees and including the following no contest provision:

> If any beneficiary or remainderman under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, any share or interest in any estate or any trust established by this Will given to that contesting beneficiary or remainderman under this Will is revoked and shall be disposed of in the same manner provided herein as if the contesting beneficiary or remainderman had predeceased me without issue.

A 1999 will contained a similar clause, as did a 2001 will. In light of this longstanding expression of Margaret's intent, Dennis needed to do more than cite his subjective belief about her wishes as justification for filing the will contest action; he needed to establish his belief was reasonable. He did not.

*Testator's Conduct*. Dennis argues Margaret's decision to divide the property disproportionately supports a finding that he acted in good faith and with probable cause in filing the will contest action. But Margaret gave reasons for the disproportionate distribution. She stated:

> My husband and I wish to formally acknowledge that we recognize and understand that the cumulative effect of our wills and The Workman Family Trust will be to give our son, Gary, a disproportionately large share of our combined assets. We have intentionally and knowingly made these provisions understanding that Gary will receive more of our combined estates than our other two children. We have done this to recognize the many years of contribution and effort made by Gary, which has benefited us over the years that he has lived near us. The statement I am making in this paragraph is merely precatory and intended to express my intent.

As noted, Margaret also expressed doubts about Dennis' financial wherewithal and attempted to protect her assets from his financial dealings. One of her attorneys testified, "Most of the patterns that she followed or exhibited in pursuing

her estate plan remained relatively consistent throughout the time." Because her beliefs were consistent for two decades and her conduct before and after executing her wills conformed with her beliefs, Dennis is hard-pressed to argue his view of her wishes was reasonable and he had probable cause to file the will-contest action. *See Wilson*, 743 S.E.2d at 761 (noting the testator "painstakingly developed his estate plan over the course of several years, and in various drafts . . . made it clear" how he intended his estate to be used, stating "[a]nother strong indicator of [his] intent" was "his inclusion of no-contest clauses in both his will and trust," and discerning "no reasonable or substantial basis to support a good faith finding").

*Testator's Mental Capacity.* Dennis did not call into question Margaret's mental capacity; as noted, his lack-of-testamentary-capacity claim was resolved against him before trial. At trial, one of Margaret's attorneys testified she was "a very decisive woman and was not dominated by anybody," and the other testified he "saw no evidence that anyone was controlling or influencing her." This evidence supports a conclusion that Dennis' belief about the viability of a will-contest action was unreasonable and he lacked probable cause for the filing.

*Jury Question.* This brings us to Dennis' argument that "[t]he rulings of [the district court on summary judgment and directed verdict] support the proposition that the case was brought in good faith and with probable cause." If the court's rulings are a measure of the strength of Dennis' claims, those rulings do not assist him. In the summary judgment proceeding, the district court simply required Dennis to present "more than a scintilla of evidence" to withstand Gary's summary judgment motion instead of requiring him to establish a genuine issue

of material fact as required by Iowa Rule of Civil Procedure 1.981. With this low bar, it is no surprise Dennis' undue influence claim was allowed to proceed to trial. The denial of summary judgment says nothing about whether Dennis' belief that he had a valid claim was reasonable or whether the claim was supported by probable cause. As the district court stated in ruling on Gary's directed verdict motion, "I think Plaintiff's evidence is extremely thin but I think it is better for judicial economy in this case . . . to deny the motion for directed verdict and see what the jury does with it." *See Geisinger*, 41 N.W.2d at 93 (noting the directed verdict did not "determine the issue of probable cause"); *Wilson*, 743 S.E.2d at 763 ("[W]e question whether the claims were asserted in good faith since the primary claim asserted by the parties as a basis for discarding [the testator's] testamentary documents, undue influence, was of dubious validity.").

*Jury Deliberation.* The jury deliberated for sixty-three minutes. In *Cocklin*, "[t]he jury deliberated for twenty-nine hours and was unable to reach an agreement," and after "a 'verdict-urging instruction' was given to them," the jury "deliberated five or six hours longer before reaching a verdict." 17 N.W.2d at 136. From the short deliberation period, a court could infer the jury saw Dennis' case as weak and Gary's case as supported by overwhelming evidence.

A court addressed similar evidence in *Russell v. Wachovia Bank, N.A.*, 633 S.E.2d 722, 727-28 (S.C. 2006). The court stated, "Family discord and strife, coupled with a less-than-favorable inheritance, do not constitute probable cause. . . . Any suspicions [the will contestants] may have had about the influence of others over Testator should have been dispelled by the

overwhelming evidence of Testator's abilities." *Russell*, 633 S.E.2d at 727-28.

The court continued,

> There is evidence throughout the record that Testator anticipated that certain beneficiaries would contest the validity of his estate plan. He told his attorney and his son . . . that he anticipated a challenge. . . . He even went so far as to have himself examined by a psychiatrist to create a record of his testamentary capacity. And most importantly, he amended his will and revocable trust to include language explicitly providing that beneficiaries who contested the validity of the estate plan would have their interest revoked and "shall be deemed to have predeceased [him]." In sum, he did all that he could have to ensure that his wishes would be respected. If a no-contest clause cannot be upheld under these facts, such a clause would not ever be enforceable.

*Id.* at 728. The same holds true here.

On our de novo review, we conclude Dennis failed to establish probable cause and good faith for the filing of his will contest action. *See Conklin*, 17 N.W.2d at 136 (stating a remand was not required to address the good faith and probable cause exception); *see also Geisinger*, 41 N.W.2d at 92 (referring to record in trial on objections together with record in trial on construction of will); *cf. Peppler*, 971 P.2d at 698 (noting transcript of original bench trial was not included in appeal record and district court made no finding of probable cause, necessitating remand for district court determination). Accordingly, the no contest provision was enforceable, and the district court appropriately granted Gary's motion to revoke Dennis' interest or shares.

The question remains whether the interest and shares of Dennis' child also should have been revoked. As father of the minor child, Dennis was the appropriate person to file an action on behalf of the child. While we are troubled by his seemingly impulsive decision to add his child, the no contest provision was

clear: anyone who contested the will by "filing" an action would be divested of their interest. In light of this language and Dennis' failure to establish probable cause and good faith, we conclude the district court appropriately divested the child of his interest in the estate. *See In re Estate of Hamill*, 866 S.W.2d 339, 345 (Tex. App. 1993) (concluding "[t]he mere filing of a will contest is not sufficient to invoke the harsh remedy of forfeiture under a no-contest clause if the contest is later dismissed prior to any legal proceedings being held on the contest and if the action is not dismissed pursuant to an agreement settling the suit" but stating "[o]ur holding is subject to the caveat that the no-contest clause under consideration here did not expressly provide that the mere filing of a contest was sufficient to invoke the clause. The effect of such a provision upon the filing and dismissal of a will contest is not before us and might present a different question"); *Womble*, 95 S.E.2d at 220 ("If the testator had desired to except his infant beneficiaries from the 'no contest' provision he could have very easily used appropriate language to that end. He did not do so.").

## II. Attorney Fees

The district court approved Gary's application for attorney's fees after finding he "acted reasonably and with the good faith interest of carrying out his obligations as [e]xecutor and representing the desires of Margaret Workman," notwithstanding his "significant personal interest in the outcome of this litigation." Dennis contends Gary's actions did not benefit the estate and, accordingly, the attorney fee award was unwarranted.

"When any person is designated as executor in a will . . . and defends . . . any proceedings in good faith and with just cause . . . that person shall be

allowed out of the estate necessary expenses and disbursements including reasonable attorney fees . . . ." Iowa Code § 633.315. "An action may . . . benefit an estate if it determines or represents the decedent's desires and intentions as expressed in the will." *In re Estate of Wulf*, 526 N.W.2d 154, 157 (Iowa 1994). "We give a district court great deference when ruling on whether services benefit an estate." *In re Estate of Bockwoldt*, 814 N.W.2d 215, 229 (Iowa 2012).

Assuming without deciding Dennis had standing to contest this issue in light of the revocation of his interest in the estate, we conclude the district court did not abuse its discretion in granting Gary's request for attorney fees. *See In re Estate of Olson*, 479 N.W.2d 610, 614 (Iowa Ct. App. 1991) (setting forth standard of review). Gary carried out the intention of his mother as reflected in her 2007 will. Although his personal interests were also served, the personal interest had to be "other than or in addition to the interest a will grants" to foreclose an attorney fee award. *Wulf*, 526 N.W.2d at 157. In this case they were not. We affirm the court's ruling on the motion for attorney fees.

## III.    *Accounting, Disbursements, and Farm Leases*

Gary filed an application to approve accounting, disbursements, and farm leases. The district court approved the application. On appeal, Dennis contends Gary "failed to meet" his burden of "prov[ing] he properly discharged his [fiduciary] duty." In his view, Gary's "proposal that his rents decrease by 46% based on a 12.5% reduction in the value of farm ground is not sufficient to meet the burden of persuasion."

Again, we assume without deciding Dennis had standing to challenge this issue. The district court found

> Gary Workman's procedure for determining cash rent, a publication from the Iowa State University Extension and Outreach, to be a fair and reasonable method of calculating cash rent. Specifically, the rent was calculated at 30% of the gross crop revenue from the farm (average price of corn at the local elevator X actual production history average X 30%).

We agree with this reasoning and affirm the court's ruling.

**AFFIRMED.**

Bower, J., concurs; Potterfield, J., dissents.

**POTTERFIELD, Judge.** (dissenting)

I respectfully dissent; I would find the district court's rulings in Dennis's favor on the motions for summary judgment and directed verdict sufficient to establish probable cause for Dennis's claim. The majority credits the district court's hedging of its bets by restating the standard on summary judgment as "more than a scintilla" and denying the motion for directed verdict by characterizing the evidence as "thin." These equivocal statements by the trial court do not change the rulings' green light for the claim to go to the jury—the classic test of probable cause.

The majority discusses the evaluation of a challenger's reasonable belief in the context of the extremes of "overwhelming" evidence and no evidence. Our case law does not draw such a broad distinction. In *Geisinger v. Geisinger*, 41 N.W.2d 86, 94 (Iowa 1950), our supreme court found a directed verdict against the challengers to the codicils was not conclusive but only one circumstance to consider in deciding whether the challengers should suffer forfeiture. Nor was the absence of evidence altogether on one claim considered dispositive. *Geisinger*, 41 N.W.2d at 92–93.

The trial judge in *Geisinger* gave substantial weight to the evidence that the challengers acted on advice of counsel. 41 N.W.2d at 93. I agree with the majority that Dennis would have improved his position at trial and on appeal if he had met Gary's trial evidence on the no-contest provision with evidence of his reliance on counsel's advice. Here, we do know that counsel undertook the representation of Dennis and continued through the trial, allowing us to infer

Dennis relied on counsel's advice as one circumstance in the evaluation of Dennis's good faith and reasonable belief in his claim.

The trial judge here discounted his denial of the motions for summary judgment and directed verdict, relying on Dennis's deceptive and desperate behavior as he attempted to handle his serious financial problems as evidence of bad faith in bringing his challenge. While Dennis undoubtedly needed his inheritance, the evidence draws no connection between that need and a bad faith or lack of probable cause for his challenge to the codicil.

Our courts recognize the general principle that equity abhors forfeitures. *Brown v. Nevins*, 499 N.W.2d 736, 738 (Iowa Ct. App. 1993). "In adherence to that rule, forfeiture statutes are to be constructed strictly against a forfeiture, with the burden to show full and strict compliance with the statutory procedures upon the party seeking forfeiture." *Jamison v. Knosby*, 423 N.W.2d 2, 5 (Iowa 1988); *see Van Hosen v. Bankers Trust Co.*, 200 N.W.2d 504, 507–08 (Iowa 1972) (stating that a court of equity will enforce a contract where the parties have made a contract that results in forfeiture, but even then, "since forfeitures are not favored, those claiming them should show the equities clearly on their side"); *see also Cowan v. Cowan*, 75 N.W.2d 920, 924 (Iowa 1956) ("In the absence of a statute declaring such [forfeiture] provisions to be void, however, a clear stipulation for a forfeiture will be enforced where not contrary to public policy, and the law does not, unless there is a foundation in fact or law to justify it, prevent a forfeiture.") The record here does not sufficiently support forfeiture.

I would reverse the revocation of Dennis's interest and also the derivative revocation of his son's interest under the forfeiture clause herein. Even if the

district court and the majority correctly find the evidence supports the revocation of Dennis's interest, I would reverse the revocation of his son's interest. The son, for whom his grandmother provided a separate, specific devise, did not make a decision to join his father's challenge to the will under the record here. He was a child when his father's litigation was undertaken and when his father attempted to include him in the challenge. He exercised neither bad faith nor unreasonable belief, directly or indirectly. His role in the litigation began and ended abruptly because his claim was time-barred. He should not suffer forfeiture of his interest.